GEORGE M. MANDES *v.* ROBERT GODIKSEN ET AL.
(AC 18532)

Landau, Spear and Dupont, Js.

Argued December 9, 1999—officially released March 28, 2000

*Kenneth J. Bartschi*, with whom were *Wesley W. Horton* and *Gerald E. Farrell, Jr.*, and, on the brief, *Gerald E. Farrell, Sr.*, and *Allison Wood*, certified legal intern, for the appellant (plaintiff).

*Geraldine Battistoli*, for the appellees (defendants).

### Opinion

DUPONT, J. The plaintiff, George M. Mandes, brought this action (1) to quiet title, (2) for slander of title pursuant to General Statutes § 47-33j and (3) for damages. The defendants[1] counterclaimed, also seeking to quiet title.[2] The dispute of the parties centers about

---

[1] The defendants are Robert Godiksen, William J. Nolan, Constance Milardo Sadlowski, Barbara S. Gregg, Kevin S. Gregg, Tina Marie McDermott, Frances A. Milardo, Josephine V. Turner, Gary F. Bohm, Alexander D. Puziak, Janis B. Puziak, Anna Ferrara, Florence Uccello and Walter J. Milardo.

[2] The defendants also sought in the counts of their counterclaim to apply the doctrine of collateral estoppel in connection with the plaintiff's action for slander of title and to apply the principles of adverse possession to establish their easements, rights-of-way or reservations. The trial court impliedly found for the plaintiff as to these claims and for the defendants as to the plaintiff's claim for slander of title. The court held that a prior action involved in the plaintiff's claim for slander of title was a "personal injunction" and ordered the defendants to remove from the land records of the town of Westbrook a stipulation reached in that prior action. Because the trial court found that the defendants acquired deeded rights to the easements claimed by them, it must have rejected their inconsistent claim of adverse possession, or prescriptive rights. The parties have not appealed

the existence and extent of certain easements over the plaintiff's property. The court rendered judgment, which, in effect, quieted title in the plaintiff, but construed deed reservations and rights-of-way over the plaintiff's land in favor of the defendants. No damages were awarded to the defendants or to the plaintiff.

This plaintiff's appeal solely concerns easements over the plaintiff's land. There is no dispute as to the plaintiff's title in fee simple to his deeded parcels. The court rendered judgment that the defendants have (1) a right-of-way to pass and repass to the beach adjoining Long Island Sound over a portion of the plaintiff's land, namely a parcel seven and one-half feet wide and 110 feet long located at the easternmost seven and one-half feet of the plaintiff's land,[3] (2) an easement consisting of beach rights to the entire beach area fronting the plaintiff's land and fronting a concrete patio immediately adjacent to the plaintiff's dwelling, (3) an easement to use the patio area lying to the south of and immediately adjacent to the plaintiff's dwelling, and (4) the right to use two sets of steps leading to the beach, one of which is located at the end of the seven and one-half foot right-of-way and the other, approximately in the middle of the concrete patio.[4] The court ordered and described certain other conditions and obligations to implement its judgment.[5]

from any of these rulings or judgments. The defendants have not claimed to have acquired prescriptive easements as an alternate ground for affirmance of the judgment granting them the easements as found by the court. Although the judgment file states that the court found the issues for the defendants, that is not strictly the case, as herein explained.

[3] The plaintiff does not appeal from this portion of the judgment.

[4] The right to use the steps is dependent on whether the defendants have deeded rights to use the patio and the beach.

[5] These conditions and obligations are as follows: "As with all easements, the defendants have the obligation and the duty to maintain said steps. . . . The plaintiff is to clear the seven and one-half foot right-of-way of any and all obstructions for its full length and width. If the plaintiff is required, for safety purposes, to construct a rail at the south and east ends of the patio, [he] shall limit the height and construction of same to the minimum height

The defendants have not appealed from any of the court's orders or its judgment. The plaintiff claims that the trial court should not have concluded that (1) the defendants have deeded rights to use the patio on the plaintiff's land, (2) the defendants have the right to use the plaintiff's beach and (3) the unity of title doctrine should not be applied. We need to discuss the first two claims only.[6]

"Intent as expressed in deeds and other recorded documents is a matter of law. *Contegni* v. *Payne*, 18 Conn. App. 47, 51, 557 A.2d 122, cert. denied, 211 Conn.

allowed by the building regulation[s] of the town of Westbrook. [If] [t]he plaintiff is required for safety purposes to gate the premises, said gates shall not at any time be locked as to frustrate the free use of the premises by the defendants."

[6] Three of the defendants, Alexander D. Puziak, Janis B. Puziak and Gary F. Bohm, would not have been entitled to an easement, even if the relevant deeds and maps evinced an intent to create one, had the doctrine of unity of title been applied. The court, however, refused to apply that doctrine, which at the time was controlling decisional law, deeming it "archaic." After the court's judgment, *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, 250 Conn. 135, 735 A.2d 798 (1999) (en banc), held that the doctrine should be abandoned in cases involving easements; see also *Powers* v. *Olson*, 252 Conn. 98, 109, 742 A.2d 799 (2000). We hold that the trial court in the present case was right, not because it was prescient, but because we apply *Bolan* retroactively. See *Perkins* v. *Fasig*, 57 Conn. App. 71, 74–76, A.2d (2000). The three defendants whose predecessors in title did not have an interest in the dominant estate at the time of the conveyance reserving the easements are in the same legal position as the other defendants.

The plaintiff also argues that a *reservation* of an easement is different from a *grant* of an easement. The language in *Bolan*, however, which the Supreme Court found to have created an easement, was couched in terms of a reservation, as is true in this case. See *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, supra, 250 Conn. 142.

Any argument that the easements in question here, as described in Volume 36, pages 289 and 290, of the Westbrook land records, were personal to the grantees named in that deed only, and therefore did not run with the land, must fail. The language of the deed states that the grantors reserve the easement for "themselves, their heirs and assigns." The general rule is that an easement may be construed as personal only when the deed language fails to contain the words "heirs, successors and/or assigns." *Brown* v. *Connecticut Light & Power Co.*, 145 Conn. 290, 298–99, 141 A.2d 634 (1958).

806, 559 A.2d 1140 (1989); *Grady* v. *Schmitz*, 16 Conn. App. 292, 295–96, 547 A.2d 563, cert. denied, 209 Conn. 822, 551 A.2d 755 (1988)." *Perkins* v. *Fasig*, 57 Conn. App. 71, 76, A.2d (2000). If, after a plenary review, an appellate court concludes that deeded easements exist, their nature and extent usually must be decided by a trial court, and ordinarily a remand is required for a finding of relevant facts to establish their boundaries. See *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, 250 Conn. 135, 146–47, 735 A.2d 798 (1999). Although the intent to create an easement by recorded instruments is a question of law, the deeds, maps and recorded instruments that created the easement must be considered in light of the surrounding circumstances to determine the nature and extent of the easement. *Perkins* v. *Fasig*, supra, 76. In the present case, however, if we determine that the easements exist, no remand would be necessary because the trial court has already defined the precise limits of the easements.[7] Unless the facts that support those limits were improperly found, without supporting evidence, the judgment of the trial court should be affirmed.

The question to be determined here is whether there was an intent as expressed in the plaintiff's and the defendants' chains of title to establish the easements as they were found to exist by the trial court. We do so by an examination of the deeds, the map referenced in the plaintiff's deed and the recorded instruments that appear in the chain of title to the particular parcel of land. *Powers* v. *Olson*, 252 Conn. 98, 108, 742 A.2d 799 (2000); *Perkins* v. *Fasig*, supra, 57 Conn. App. 76. We must also examine the facts found by the court as relevant to the establishment of the particular dimensions of the easements.

---

[7] The trial court could not define the footage of the beach because of the nature of beaches, which expand and diminish in width as the sands shift.

The plaintiff obtained title to premises known as 7 Pepperidge Avenue in the town of Westbrook by two deeds, a warranty and a quitclaim, both dated May 22, 1991. The warranty deed contained the following language: "Together with and subject to the reservations, restrictions and limitations as to use as are set forth in a certain quit claim deed dated January 8, 1948 . . . ." The quitclaim deed referenced in the plaintiff's warranty deed states that the owners of lots nos. 23, 26, 27, 28, 30, 31 and 43 on a map of Seaside Park, Westbrook, on file in the office of the town clerk of Westbrook, have an easement over a "strip of land 7 1/2 feet wide located along the eastern boundary of the premises conveyed for its entire depth." The eastern boundary of the plaintiff's land as described in his warranty deed is 110 feet long. The defendants are the owners, successors, heirs or assigns of the lots named in the 1948 deed, as well as being the prior owners, successors, heirs or assigns of the land now owned by the plaintiff. The language of the quitclaim deed also states that the grantors reserve for themselves, "their heirs and assigns," and for the "owners, families and guests occupying the houses of the lots or premises" (lots nos. 23, 26, 27, 28, 30, 31 and 43) "the right to use in common with [the grantees], their heirs and assigns, *for all purposes* which owners, tenants, guests, *bathers* and others would use *land adjacent to Long Island Sound,* a strip of land eighteen (18) feet ten (10) inches in width and forty (40) feet in length lying immediately in front of the dwelling herein conveyed [the plaintiff's dwelling], the southeast corner of which is one hundred and fifty (150) feet from the northeast corner of said premises." (Emphasis added.) From these deeds and the map of Seaside Park, the trial court concluded that the defendants possessed deeded easements to use portions of the plaintiff's land.

The trial court also found certain facts that were relevant to its determination of the location and parame-

ters of the easements. The dwelling on the subject property was damaged by a 1938 hurricane. In 1939, the predecessors in title to the defendants and some of the defendants acquired their lots. They also obtained title to the land now owned by the plaintiff on July 10, 1939. They enjoyed the fronting beach from 1939 to 1948. In 1948, the defendants and their predecessors in title bid among themselves on a sale of the subject property, with the highest bidders, Peter S. Marchese and Josephine Marchese, taking title to the land now owned by the plaintiff. The trial court found that these grantors "anticipated and intended that the deed to the successful bidder would reserve to the grantors and certain lot owners [not fronting on Long Island Sound] beach rights, the so-called patio rights and the seven and one-half foot right-of-way." The trial court found that "prior to the plaintiff acquiring [the land in question], the dwelling was remodeled, with the result that both the porches on the first and second stories were closed in and are now part of the interior dwelling spaces in said cottage.

"As a result of the remodeling, the interior portions of the cottage have been extended so that the lower-story porch no longer function[s] as a buffer between the interior of the cottage and the patio easement. Obviously, such alterations have resulted in a closer proximity between the living quarters of the cottage and the easement."

Other evidence showed that the patio area was used for the storage of the defendants' chairs, bicycles and boats. Beach usage by the defendants and their predecessors was shown in numerous photographs. The trial court concluded that the quitclaim deed of 1948 reserved "beach rights lying in front of the patio" and concluded that the deed granted rights in the plaintiff's patio, namely land eighteen feet, ten inches in width

and forty feet in length lying immediately in front of the dwelling.

The plaintiff does not attack the finding of the court that the defendants have a seven and one-half foot wide easement along the easternmost boundary of the plaintiff's land. He argues, however, that the length of 150 feet as provided in the quitclaim deed of 1948 was not a scrivener's error, as determined by the trial court,[8] but an intent to convey an easement in littoral rights. The plaintiff attempts to show that the defendants and their predecessors in title were not thereby reserving an easement in the patio, but reserving the right to exercise littoral rights for forty feet beyond its deeded boundary. The plaintiff claims that the eighteen foot, ten inch by forty foot strip of land referred to in the 1948 deed lies in Long Island Sound.

The easement over the seven and one-half foot strip as described in the 1948 deed did not delineate its length, but used the words "for its entire depth." In addition to this strip, the 1948 deed also reserves the right to use a strip of land eighteen feet, ten inches wide and forty feet long, and describes that land's southeast boundary as being 150 feet from the northeast corner of the premises conveyed. The plaintiff argues that if the seven and one-half foot strip is in fact 150 feet long, the last forty feet of it would extend beyond 110 feet, namely beyond the southeast corner of the existing patio and the southeast corner of the premises conveyed, beyond the high-water mark of the beach and then into the water of Long Island Sound beyond the low-water mark. The trial court found that the 150 foot

---

[8] The 1948 deed described the southeast corner of the easement strip as being 150 feet from the northeast corner of the premises conveyed. The trial court concluded that the deed should have described the southeast corner of the premises as being 110 feet from its northeast corner because the grantors only owned 110 feet. A grantor cannot convey a greater title than he or she possesses. *Powers* v. *Olson*, supra, 252 Conn. 109 n.6.

dimension was a scrivener's error and should have been 110 feet, the amount of footage actually conveyed by the grantors in 1948 and actually conveyed to the plaintiff in 1991.

The plaintiff sees nothing unusual in a grantor's reservation of littoral rights that were not deeded to the grantor or his or her predecessor in title, or in reserving such rights in common with a grantee without naming the rights as such or describing them in any way. The plaintiff explains his argument by first conceding that the grantors could not warrant title to an underwater eighteen foot by forty foot parcel "because it lies in Long Island Sound," and then stating that because the grantors did not have title to such land, they had to use a quitclaim deed to convey their littoral rights and reserve the rights in common with their grantees. This argument assumes that the grantors intended to reserve littoral rights and could achieve that purpose without specifically, or even impliedly, saying so, a type of silent, unexpressed, "in pectore" reservation of use.

Title to the land between the high and low-water marks is in the state. *Matto* v. *Dan Beard, Inc.*, 15 Conn. App. 458, 476, 546 A.2d 854, cert. denied, 209 Conn. 812, 550 A.2d 1082 (1988). The owner of the upland adjoining the high-water mark has the exclusive privilege of wharfing out, erecting piers, the right of accretion, and access to and from the upland, as well as the right to occupy the area in any way that does not interfere with navigation, and may convey those rights separately from the owner's adjoining land. Id., 480–81. Although the grantors of the 1948 deed had littoral rights and could have quitclaimed them or reserved a right to use them in common with the grantees, no language in the relevant deeds supports that conclusion. To the contrary, the eighteen foot by forty foot parcel is described as land being "immediately in front of the dwelling." The seven and one-half foot right-of-way is

described as running the entire length of the premises conveyed. It is not described as running to beneath the water of Long Island Sound. We affirm the trial court's determination of the location of the land and its judgment that the defendants have deeded easement rights to use the concrete patio, an area of eighteen feet, ten inches in width and forty feet in length.

The plaintiff also claims that the defendants do not have an easement to use the plaintiff's beach because the operative deed does not mention "beach rights." The plaintiff's land is described in the deed to him as being bounded on the south by Long Island Sound. Such a boundary is tantamount to ownership of the beach adjoining the upland, from the upland to the high-water mark of the beach. *Mihalczo* v. *Woodmont*, 175 Conn. 535, 538, 400 A.2d 270 (1978). The plaintiff agrees in his reply brief that the defendants have the right to use a seven and one-half foot strip of the plaintiff's beach to the high-water mark. The plaintiff claims, however, that the defendants do not have deeded rights to use the entire beach.[9]

The trial court, as a matter of law, held that the reservation of an easement in the 1948 deed was a reservation to use the entire beach area in front of the concrete patio, whatever the dimensions of the beach

---

[9] Although the defendants claimed in count two of their counterclaim adverse possession of the seven and one-half foot right-of-way, and of the patio area immediately in front of the plaintiff's dwelling and the steps leading from the patio to the beach, they did not claim adverse possession or a prescriptive easement in the beach itself. We are not concerned, therefore, with the establishment of a prescriptive easement in the beach, although certain facts found by the trial court are factors in the establishment of a prescriptive easement. See *Swenson* v. *Dittner*, 183 Conn. 289, 294, 439 A.2d 334 (1981). None of these factors, however, relate to whether the use of the beach was *adverse*, without which any claim for prescriptive rights must fail; *Klar Crest Realty, Inc.* v. *Rajon Realty Corp.*, 190 Conn. 163, 168, 459 A.2d 1021 (1983); unless an ineffective grant by deed established a basis for the finding of an adverse use. Id., 169.

may be at any particular time. The language of the reservation in the 1948 deed, according to the trial court, is ambiguous.

The language describes the purpose of the easement as being one "for which owners, guests, bathers and others would use land adjacent to Long Island Sound," and the dimensions of the easement as being "18 [feet] 10 [inches] in width and 40 [feet] in length lying immediately in front of the dwelling on the premises herein conveyed." Because of the ambiguity, the court relied on an interpretation of the evidence to discern the intent of the parties. It concluded that there was an intent to create an easement over the entire beach because of the use of the entire beach by the defendants and their predecessors prior to the 1991 conveyance to the plaintiff. The defendants and their predecessors in title had title to the plaintiff's property from 1939 to 1948, including the beach, and used the beach as of right as owners until they conveyed it to the plaintiff's predecessors in title in 1948. The court concluded that when the defendants conveyed what is now the plaintiff's land, reserving the use of certain portions, that the defendants must have intended to continue the same use they had enjoyed as owners, one of which was the use of the beach. The court stated that "[i]t is unreasonable to believe that the grantors . . . would give up beach rights, the major reason for their purchase of the property [in 1939] and the purpose for which it was used from its acquisition through the date of conveyance, January 8, 1948, as owners, and to the present day as encumbrances reserved in the deeds."

One of the stated purposes of the reservation was one for which a bather would use land adjacent to Long Island Sound. Between the patio, to which we have concluded the defendants have an easement, and the water of the Sound is the beach. The beach, not the patio, is primarily the area a bather would use. The

easement, however, is described as having approximately the same dimensions as the concrete patio and as being immediately in front of the dwelling. The patio, not the beach, is immediately in front of the dwelling. We, therefore, agree that the language creating the easement is ambiguous.

A deed shall, if possible, be construed to effectuate the intent of the parties. "[I]t is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence." (Internal quotation marks omitted.) *Hare* v. *McClellan*, 234 Conn. 581, 593–94, 662 A.2d 1242 (1995). Thus, "if the meaning of the language contained in a deed or conveyance is not clear, the trial court is bound to consider any relevant extrinsic evidence presented by the parties for the purpose of clarifying the ambiguity." *Lakeview Associates* v. *Woodlake Master Condominium Assn., Inc.*, 239 Conn. 769, 780–81, 687 A.2d 1270 (1997). The review of the court's construction is plenary. *Carbone* v. *Vigliotti*, 222 Conn. 216, 222, 610 A.2d 565 (1992).

Here, the trial court properly considered extrinsic evidence, and we conclude that the court's construction of intent as expressed in the language of the 1948 deed should not be disturbed. We also agree with the court that the easement to the beach cannot be precisely determined in feet because of the nature of beaches.

The judgment is affirmed.

In this opinion the other judges concurred.