JAMES R.G. McBURNEY ET AL. *v.* PETER PAQUIN
ET AL.

JAMES R.G. McBURNEY ET AL. *v.* ANTOINETTE
VERDERAME
(SC 18345)
(SC 18346)

Rogers, C. J., and Palmer, Zarella, McLachlan, and Eveleigh, Js.

Argued April 18—officially released October 4, 2011

*William F. Gallagher*, with whom, on the brief, was *David McCarry*, for the appellants-cross appellees (defendants and intervening defendant Leslie Carothers).

*Daniel J. Klau*, for the appellees-cross appellants (plaintiffs).

*Richard T. Meehan, Jr.*, and *Christopher J. Sochacki*, for the appellee-cross appellant (intervening plaintiff Beachcroft, LLC).

*William H. Clendenen, Jr.*, with whom, on the brief, was *Maura A. Mastrony*, for the appellees (intervening plaintiff Roger A. Lowlicht et al.).

*Opinion*

ROGERS, C. J. The issues presented by these appeals and cross appeals center on the scope of an implied easement located on a lawn that lies between a beachfront development and Long Island Sound (sound) in the town of Branford. The defendants[1] appeal from the judgments rendered by the trial court concluding that the implied easement over the lawn in favor of the defendants conferred only a right-of-way to access the shoreline. The defendants claim on appeal that the trial court improperly: (1) found that the implied easement was limited to a right-of-way; (2) failed to give sufficient evidentiary weight to the trial record and to the decision of this court in *Fisk* v. *Ley*,

---

[1] The defendants, Peter Paquin, Suzanne Paquin and Antoinette Verderame, filed an appeal challenging the trial court's judgments. In addition, Leslie Carothers, an intervening defendant, filed a separate appeal. For convenience, we refer to Peter Paquin, Suzanne Paquin, Verderame and Carothers collectively as the defendants and individually by name.

76 Conn. 295, 56 A. 559 (1903), a case concerning the same property that is the subject of this case;[2] and (3) granted the plaintiffs'[3] motion in limine, limiting the evidence of the use of the lawn to that occurring between the creation of the implied easement and the early twentieth century. We disagree with each claim and, with respect to the defendants' appeals, affirm the judgments of the trial court.

On cross appeal, Beachcroft, LLC (Beachcroft),[4] an intervening plaintiff, argues that the trial court improperly ordered, in a supplemental memorandum of decision, that the right-of-way also could be used for the purpose of accessing areas other than the shoreline. According to Beachcroft, the record is devoid of any evidence supporting that supplemental order. We agree and, with respect to the cross appeal, reverse the judgments of the trial court.

The record and procedural history reveal the following facts. In July, 1885, Ellis Baker filed in the Branford land records a development plan (Baker plan) for a beachfront community on the sound. At the time Baker

[2] The trial court took judicial notice of this court's opinion in *Fisk*, and admitted the trial record for that case, which contains the trial court's factual findings.

[3] The plaintiffs are James R.G. McBurney and Erin McBurney (collectively McBurneys). In addition, the trial court granted motions by Roger Lowlicht, Kay Haedicke and Beachcroft, LLC (Beachcroft), to intervene as plaintiffs. For convenience, we refer to the McBurneys, Lowlicht, Haedicke and Beachcroft collectively as the plaintiffs and individually by name.

[4] Although the McBurneys also filed a cross appeal, their brief does not raise or address any additional issues not encompassed by the appeals, and they have not addressed the question raised by Beachcroft's cross appeal in their brief, other than to indicate that they "agree with Beachcroft . . . ." Consequently, we consider as abandoned any issues raised in the McBurneys' cross appeal. See *Sovereign Bank* v. *Licata*, 116 Conn. App. 483, 486 n.3, 977 A.2d 228, cert. granted, 293 Conn. 935, 981 A.2d 1080 (2009). In deciding Beachcroft's cross appeal, we consider only the arguments appearing in Beachcroft's brief and reply brief, and in the defendants' reply brief. All subsequent references to the cross appeal are to Beachcroft's cross appeal.

filed the plan, he owned the property within the development, including the lawn, as trustee for the beneficiaries of a trust. The beneficiaries of the trust included Baker himself.

The Baker plan is a map depicting thirty-five lots, a strip of land labeled "[a]venue" and an area labeled "[l]awn." The lawn lies between the lots and the beach that borders on the sound. The avenue, which formerly was known as Maple Avenue and presently is known as Crescent Bluff Avenue (avenue), runs north and south through the development, perpendicular to the sound. Each residential lot is numbered. Four of the lots abut the lawn and face the sound (waterfront lots), while the remaining lots are located behind the waterfront lots and do not have direct access to the lawn or the beach (rear lots). From the west to the east, the waterfront lots are numbered lots 2, 4, 3, and 1, respectively. The rear lots, lots 5 through 36,[5] line the avenue.[6]

The avenue runs between the center two waterfront lots, lots 4 and 3, and, at its southern terminus, meets the lawn, over which the implied easement extends. At present, the lawn is approximately forty feet deep between the southern border of the waterfront lots and the beginning of a concrete slope that leads down to the beach. Alongside the concrete slope is a concrete ramp running down to a seawall, on top of which is a concrete walkway. Alongside the ramp, a set of stairs leads down to the water.

The plaintiffs own waterfront lots,[7] and the defendants own rear lots in the development. In a 2006 appeal

---

[5] The Baker plan does not include a lot 35, but instead skips from lot 34 to lot 36.

[6] A copy of the Baker plan is appended to this opinion as an appendix.

[7] The McBurneys own lot 4. Lowlicht and Haedicke own lot 2, which is adjacent to lot 4. Beachcroft owns, inter alia, the portion of the lawn in front of lot 3, and Beachcroft's principal member, Barbara Saggese, owns lot 3.

from previous proceedings involving some of the same parties, this court held that the filing of the Baker plan in the land records, along with specific references to that plan in deeds conveying property within the development, had created an implied easement over the lawn for the benefit of the defendants and other lot owners in the development. *McBurney* v. *Cirillo*, 276 Conn. 782, 799–806, 889 A.2d 759 (2006), overruled in part on other grounds, *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 284–89, 914 A.2d 996 (2007). After concluding that an implied easement existed, we remanded the case for further proceedings to determine the scope of that easement, and we ordered the trial court to give notice of the pendency of this action to all lot owners in the development to allow them the opportunity to join as parties. Id., 823.

On remand, the plaintiffs argued that the scope of the implied easement was limited to a right-of-way to access the shoreline. The defendants argued that the easement's scope was broader and afforded them the right to recreate and socialize on the lawn. During an evidentiary hearing on March 10, 2008, the trial court reviewed four types of documentary evidence to determine the scope of the implied easement: maps, including the Baker plan itself; photographs and picture postcards; deeds evidencing various conveyances within the development; and the record in *Fisk* v. *Ley*, supra, 76 Conn. 295. The court also heard testimony from Jane Bouley, the Branford town historian, and Lawrence Fisher, a licensed land surveyor. After examining the evidence and considering the testimony, the trial court, in an August 6, 2008 memorandum of decision, found that the defendants had an implied easement "only to pass and repass over the entire lawn . . . as a means of accessing the shoreline." The defendants now challenge this determination.

When the trial court issued its August 6, 2008 decision, it withheld final judgment and ordered a posttrial hearing to address questions regarding who should be bound by the judgments and who should be responsible for maintaining the easement. After that hearing on September 8, 2008, the trial court issued a supplemental memorandum of decision, in which it stated that it did not "mean to limit the rear lot owners' right to pass and repass over the lawn only when they are on their way to the shoreline." Rather, the trial court issued supplemental orders, which provided in relevant part that "[t]he rear lot owners may use their easement . . . to pass and repass to property to the east of [the] . . . [a]venue, including any open space or alternate access to the shoreline . . . ." This portion of the supplemental orders is the subject of the cross appeal. Additional facts and procedural history will be set forth as necessary.

I

The defendants claim first that the trial court improperly determined that the implied easement afforded the lot owners a mere right-of-way, and not the additional right to recreate on the lawn. The defendants argue that Baker intended to grant lot owners the right to recreate on the lawn, and that the trial court's contrary finding is unsupported by the evidence. Additionally, according to the defendants, the label "[l]awn" on the Baker plan conveys a right to unrestricted "common" use absent a clear statement of Baker's contrary intent. We are not persuaded.

As an initial matter, we set forth the governing legal principles. As we explained in our decision in *McBurney*, an implied easement arises when it is intended by the parties, "as shown by the instrument [here, the Baker plan] and the situation with reference to the instrument," and when "the easement is reasonably nec-

essary for the use and normal enjoyment of the dominant estate[s]." (Internal quotation marks omitted.) *McBurney* v. *Cirillo,* supra, 276 Conn. 800.

"[T]he 'scope' of an easement 'is what its holder may do with it, the purposes for which it may be used.'" *Kuras* v. *Kope,* 205 Conn. 332, 342, 533 A.2d 1202 (1987). Typically, to discern the scope of an easement, "the deeds, maps and recorded instruments that created the easement must be considered in light of the surrounding circumstances to determine [its] nature and extent . . . ." *Mandes* v. *Godiksen,* 57 Conn. App. 79, 83, 747 A.2d 47, cert. denied, 253 Conn. 915, 754 A.2d 164 (2000). In a case like the present one, however, where "the easement has been created only by a reference in the conveyance to a map," such as the Baker plan, and the map provides no guidance as to the type of use contemplated, "the scope of the intended easement rests on inference from the circumstances." 4 R. Powell, Real Property (2010) § 34.12, p. 34-147; see also 1 Restatement (Third), Property, Servitudes § 4.1, comment (a), p. 498 (2000) (in interpreting servitudes "created without an expression of intention by the parties, the relevant focus of inquiry is on the expectations the circumstances should reasonably have engendered in the parties").[8] We are further guided by the general principle that "[t]he use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit." (Internal quotation marks omitted.) *Stefanoni* v. *Duncan,* 282 Conn. 686, 701, 923 A.2d 737 (2007).

As to our standard of review, the determination of the scope of an easement is a question of fact that will

---

[8] "The circumstances of the mode of creation of the servitude affect the manner in which it is interpreted." 1 Restatement (Third), supra, § 4.1, comment (a), p. 498. "If the servitude is expressly created, the expressed intentions of the parties are of primary importance. If the servitude is created by implication, the circumstances that provide the basis for the implication provide the basis for constructing the terms of the servitude." Id.

not be overturned unless clearly erroneous. Id., 699; see also *Sanders* v. *Dias*, 108 Conn. App. 283, 295, 947 A.2d 1026 (2008). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Slack* v. *Greene*, 294 Conn. 418, 427, 984 A.2d 734 (2009). "Under the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the evidence before the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did. *Tragakiss* v. *Dowling*, 183 Conn. 72, 73, 438 A.2d 818 (1981)." *Ayantola* v. *Board of Trustees of Technical Colleges*, 116 Conn. App. 531, 540, 976 A.2d 784 (2009).[9]

---

[9] Although they agreed at trial that the scope of the implied easement was a factual question, the defendants now maintain on appeal that our review in this case should be plenary because the trial court ultimately found a mere right-of-way "solely on the [basis of the] language of the deeds . . . ." The defendants assert that, because " '[i]ntent as expressed in deeds and other recorded documents is a matter of law,' " the trial court's determination in this case constitutes a legal conclusion. We disagree.

The deeds to which the defendants refer are not those by which the parties gained title to their properties, but, rather, are historical deeds evidencing a number of conveyances of various lots within the development that were effected around the time the Baker plan was filed on the land records. Those deeds expressly conveyed to their recipients a right-of-way to the shore. The trial court considered them as part of the overall circumstances to determine the scope of the implied easement possessed by other lot owners, including the defendants, by virtue of the filing of the plan. In short, the deeds themselves did not define the scope of the implied easement, but provided indirect evidence as to Baker's intent and the lot purchasers' reasonable expectations. Moreover, the defendants do not quarrel with the trial court's interpretation of the deeds and request that we interpret them differently, which would present a subsidiary legal issue. Rather, they argue that the trial court should have relied on other evidence, and drawn particular inferences from that evidence, to make a different finding as to scope.

As evidenced repeatedly throughout the trial court's memorandum, the court did not rely solely on the deeds to reach its ultimate conclusion. Rather, the trial court merely found the deeds to be the most compelling evidence regarding Baker's intent. As discussed hereinafter, the deeds were

We turn to the evidence presented. The trial court first reviewed a collection of maps, including the Baker plan. As to the Baker plan, which simply labeled the easement area as "[l]awn," the trial court found that it offered "no clue as to the *nature* of th[e] easement." (Emphasis in original.) Two additional maps depicted the lawn as being large, which, the court allowed, could support the defendants' argument that the original parties "intended for the rear lot owners to use it for recreational purposes . . . ." The trial court ultimately concluded, however, that the maps were not compelling evidence in that regard. Similarly, the trial court reasoned that a small rectangle depicted on the lawn on one of the maps, labeled "seats," was unhelpful because it did not indicate that the rear lot owners had the right to sit there.

only one of four types of documentary evidence that the court considered when determining the scope of the implied easement.

When analyzing the weight of the record in *Fisk*, for example, the trial court concluded that it provided some evidence of a right to recreate. Nevertheless, the court ultimately found that other sources of evidence were not "sufficient to outweigh the evidence of the deeds executed by . . . Baker contemporaneous with his creation of the easement . . . that the purpose of the easement was as a right-of-way from the lots over the lawn to the shore."

In another portion of its memorandum, the trial court concluded that "although some of the evidence submitted at the hearing indicates that the lawn in the late nineteenth and early twentieth centuries lent itself to an easement for purposes other than to pass and repass to the shore, the evidence of the deeds executed by . . . Baker demonstrates no such intent on his part and no such reasonable expectation on the part of his grantees." These statements clearly evidence the trial court's consideration of all the relevant evidence.

The present case, therefore, presents a question of fact. On remand, the trial court made its scope determination on the basis of all of the evidence introduced at the hearing by the parties, rather than solely on the basis of the deeds, as the defendants assert. The deeds constituted merely one piece of evidence that the trial court weighed to determine Baker's intent. Because the only issue on remand was the scope of the implied easement, we must review the trial court's findings with deference. In short, the trial court's rejection of evidence is as much a part of its fact-finding function as is its crediting of other evidence. Accordingly, we will not disturb the trial court's findings unless they are clearly erroneous.

Next, the trial court considered photographs and picture postcards showing images from the development that were taken during the relevant time period. Reasonably, the trial court found that none of the images, which depict either the land alone, or unknown persons present in the shoreline area or standing on a set of stairs leading from the lawn to the pier, "support[ed] the defendants' position that owners of rear lots regularly used the lawn as a place to gather . . . ." As to the people standing near the stairs, according to the court, "a posed snapshot of people at an instant in time simply is not probative of a practice of gathering and socializing on the lawn, let alone of doing so under a claim of right."

The trial court then examined a number of deeds filed by Baker contemporaneous with his filing of the Baker plan. Out of fifty-two conveyances of property within the development that Baker made between 1885 and 1905, thirty-four were conveyed by deeds that refer to a right-of-way. Most of the deeds reference the Baker plan itself, stating that each lot was transferred "[w]ith rights of way as shown upon said plan . . . ." Some are even more specific with respect to the easement, including statements such as, "[w]ith a right of way *to the sea* at the south end of . . . [the] [a]venue," "[w]ith right of way over . . . [the] [a]venue *to the sea*," or "[t]ogether with all the right which the grantor has to pass and re-pass *to the sea shore* over the highway laid out on said map . . . ." (Emphasis added.) Noting Baker's likely intent "to maximize the value of *both* front and rear lots";[10] (emphasis in original); the trial court found that the words in the deeds provided strong evidence that Baker intended for lot owners to have only a right-of-way over the lawn, and not a right to congregate there.

---

[10] In the late nineteenth century, Baker and the other trust beneficiaries owned three of the four waterfront lots, as well as various rear lots.

The trial record in *Fisk*, a case in which the right to recreate on the lawn was not directly at issue, was the final piece of evidence reviewed by the trial court. In paragraph 13 of its findings, the court in *Fisk* stated: "The avenue and lawn as well as the beach have been used in common by [the] lot owners." In paragraph 39 of its findings, the trial court in *Fisk* found: "The lawn at present is substantially level, and used by lot owners for standing and sitting thereon, and placing chairs thereon and occupying them." While the trial court in the present case acknowledged these findings, it observed that paragraph 13 said nothing about how the lot owners used the lawn, and that the wording of paragraph 39 did not rule out the possibility that lot owners stood or sat on the lawn permissibly rather than by virtue of an easement right.[11]

The trial court concluded that, consistent with the language of the express rights-of-way that Baker conveyed contemporaneously with his creation of the

---

[11] Citing this observation of the trial court, among others, the defendants argue that the court's finding as to the scope of the easement was premised on a faulty assumption, namely, that the waterfront lots, rather than the lawn, constituted the servient estate over which the implied easement ran, and, therefore, that the rear lot owners would have had to secure the waterfront lot owners' permission to recreate on the lawn. The defendants' argument is belied by the court's memorandum of decision, in which the court acknowledged that Baker, in deeds conveying the waterfront lots in 1885, included express grants of rights-of-way over the lawn. In other words, it is clear that the court considered both the waterfront and rear lots to be dominant estates and the lawn to be the servient estate.

To the extent the trial court implied that waterfront lot owners had a greater interest in the lawn or in the minimization of its common use than did the rear lot owners, that implication is not unreasonable in light of the circumstances surrounding the creation of the implied easement. Specifically, in the early years of the development, Baker, as trustee, or his successor trustees, held title to the lawn for beneficiaries of the trust who occupied the waterfront lots that were directly adjacent to the lawn. Accordingly, even if the waterfront property owners personally did not possess the fee to the lawn and, therefore, were not owners of the "servient estate," they nevertheless had beneficial interests in the lawn which Baker reasonably could have been motivated to protect.

implied easement, Baker intended, and purchasers of lots in the development reasonably expected, that the implied easement consisted of only a right-of-way "as a means of accessing the shoreline." The court concluded additionally that the defendants had failed to prove, as was their burden, that the scope of the implied easement further afforded a right to recreate on the lawn.

Upon review of the evidence presented by the parties at the hearing, we conclude that the trial court's determination that the implied easement consists of a mere right-of-way was not clearly erroneous. Although the defendants presented some evidence in support of the alternative interpretation they advanced, that evidence was neither definitive nor overwhelming. The express rights-of-way in the contemporaneously executed deeds, on the other hand, contained language that suggested strongly that community use of the lawn was expected to be limited to a means of access to the shoreline. As the trial court noted, the term right-of-way, when Baker filed the deeds as well as presently, was one of art meaning "a servitude imposed by law or by convention, and by virtue of which one has a *right to pass* on foot, on horseback, or in a vehicle, to drive beasts of burden or carts, *through the estate of another*. . . ." (Emphasis added.) Black's Law Dictionary (1st Ed. 1891) p. 1046 ; see also *Double I Ltd. Partnership* v. *Plan & Zoning Commission*, 218 Conn. 65, 75, 588 A.2d 624 (1991) ("the term 'right-of-way' is usually viewed as describing a right to travel over the property of another"). Because our standard of review is deferential, and the inferences that the trial court drew from ambiguous and conflicting evidence were reasonable ones, we will not disturb the court's finding.

The defendants draw our attention to the Restatement (Third) of Property, which provides that a map clearly designating an area as devoted to a particular use creates a strong inference that a servitude will

be created to implement that planned use.[12] 1 Restatement (Third), supra, § 2.13, p. 172. According to the defendants, Baker's use of the word "[l]awn" on his plan created a presumption that the implied easement could be used for recreation, and that presumption had to be clearly negated to create a mere right-of-way instead. We are not persuaded.[13]

The defendants' argument stretches the meaning of the Restatement beyond its clear import. Section 2.13 of the Restatement (Third) of Property provides that an area designated for common use on a map *creates* an easement, absent a clear statement from the developer that no such easement exists. *See, e.g., Doucette*

[12] Section 2.13 of the Restatement (Third) of Property provides in relevant part: "In a conveyance or contract to convey an estate in land, description of the land conveyed by reference to a map or boundary may imply the creation of a servitude, if the grantor has the power to create the servitude, and if a different intent is not expressed or implied by the circumstances: (1) A description of the land conveyed that refers to a plat or map showing streets, ways, parks, open space, beaches, or other areas for common use or benefit, *implies creation of a servitude restricting use of the land shown on the map to the indicated uses. . . .*" (Emphasis added.) 1 Restatement (Third), supra, § 2.13, p. 172.

Comment (b), which the defendants also cite, provides in relevant part: "If a map or plat clearly designates an area as devoted to a particular use, the inference that servitudes will be created to implement the planned use is strong. Only a clear statement that the developer retains the right to deviate from the uses shown on the map will ordinarily be sufficient to prevent implication of a servitude under the rule stated in this section. . . ." Id., comment (b), p. 174.

[13] The defendants also argue that it was incongruous for the trial court to find that they had only a right-of-way over the lawn when *Fisk* "conclusively determined" that lot owners had the right to use the beach for recreational purposes, and there is no indication from the various deeds that the lawn and the beach were intended to be used differently. We disagree. On the Baker plan, the beach is not part and parcel of the lawn but, rather, is separated by a boundary line. Conversely, the lawn and the avenue are depicted as one continuous expanse. Accordingly, it is not unreasonable to infer that different rights attached to each area, and that the rights-of-way referenced in the deeds contemplated only the avenue and the lawn. Cf. *McBurney* v. *Cirillo*, supra, 276 Conn. 805 (lack of division between lawn and avenue indicates they comprise single common easement area).

v. *Burnham,* Superior Court, judicial district of New Haven, Docket No. CV-07-44007490-S (August 2, 2007) (citing § 2.13 of Restatement (Third) of Property when determining whether implied easement existed). This section of the Restatement does not provide any guidance, however, with respect to the *scope* of an easement created in a map. In this case then, although the designation of "[l]awn," along with other aspects of the plan; see *McBurney* v. *Cirillo,* supra, 276 Conn. 803–805; established the existence of an implied easement for the lot owners, it simply provides no guidance as to whether that easement confers the right to recreate or merely to cross.

If the common area had been labeled for a *specific use,* that label may have shed light on the intended scope of the implied easement "as devoted to [that] particular use . . . ." 1 Restatement (Third), supra, § 2.13, comment (b), p. 174. The word "[l]awn" in the Baker plan, however, does not clearly designate the area as devoted to a particular use. Indeed, a grassy area is equally suitable for use as a site for recreational activities, or as a means of pedestrian access to somewhere else. On the basis of the foregoing analysis, we conclude that the trial court's finding as to the scope of the implied easement was not clearly erroneous.

II

The second issue on appeal concerns the trial court's assessment of the trial record in *Fisk* v. *Ley,* supra, 76 Conn. 295, an earlier appeal involving the same property at issue in this case. The defendants argue that because *Fisk* presents the "best contemporaneous evidence of the [use] . . . of the lawn . . . prior to 1903," the trial court improperly "fail[ed] to give effect" to it. The plaintiffs respond that the trial court properly considered the case and the defendants' interpretation of it, but

ultimately was unpersuaded. We agree with the plaintiffs.

In *Fisk*, the trial court issued an injunction prohibiting front lot owners from replacing a dilapidated wooden bulkhead at the foot of the lawn with a granite wall that would have run along a different line than the bulkhead. *Fisk* v. *Ley*, supra, 76 Conn. 300. The proposed wall would have been closer to the shore, reducing the size of the beach and increasing the extent of the lawn. Id., 299. Upholding the trial court's injunction, this court agreed with the plaintiff, a rear lot owner, that the proposed construction would damage his beach rights and, therefore, reduce the value of his property. Id., 299–300. As the defendants in the present matter acknowledge, the plaintiff in *Fisk* apparently preferred protection of his beach rights to an expanded lawn area, and he brought his action to achieve that end. Id., 300. At the conclusion of the opinion in *Fisk*, this court reproduced the language of the injunction that had been granted by the trial court in order to consider a claim that it was impermissibly vague and would invite further litigation. Id., 303. In addition to disallowing changes to the beach, the injunction also prevented the defendants from making changes that would "substantially interfere with the use of the lawn by the plaintiff and the other lot owners." (Internal quotation marks omitted.) Id.[14] According to the defen-

[14] In total, "[t]he injunction granted was against 'substantially changing the extent and character of the beach and the shore of the beach in front of said lawn, or of the grade of said lawn and said avenue, and from erecting and maintaining a wall upon said shore and said beach in the location marked upon [e]xhibit 5 by the red line, and from continuing the erection of the wall upon said beach, or maintaining said wall in the location it now is and is being placed,' provided that 'nothing herein shall be construed to prevent the erection of a sea wall along the line of the original, former wooden bulkhead nor from changing the grade of the lawn so as to make it uniform to the wall so erected along the original, former wooden bulkhead, provided such change shall not substantially interfere with the use of the lawn by the plaintiff and the other lot owners.' " *Fisk* v. *Ley*, supra, 76 Conn. 303.

dants, this language, read in conjunction with the trial court's finding in *Fisk* that the lot owners were accustomed to sitting on the lawn; see id., 299; necessarily implies that the rear lot owners had a right to use the lawn area to recreate. They argue, therefore, that the trial court in the present matter was obligated to find similarly.

In applying the clearly erroneous standard of review, we are deferential to the trial court on matters of weighing and choosing between competing items of evidence. *MJM Landscaping, Inc.* v. *Lorant*, 268 Conn. 429, 437, 845 A.2d 382 (2004). We do not decide factual issues de novo, or consider whether we would have made the same factual findings as the trial court, but ask only "whether in view of the evidence and pleadings in the whole record [we are] left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id.

Although the trial court ultimately concluded that the trial record in *Fisk* was less probative than the other evidence presented by the parties, the trial court did not disregard it entirely as the defendants suggest. Rather, the trial court acknowledged that the *Fisk* case "is not the dead letter the plaintiffs would have the court believe." As shown by this statement, and the trial court's subsequent discussion of the factual findings in *Fisk*, it is clear that the trial court considered its evidentiary value, but disagreed with the defendants' claims as to its import. After our review of *Fisk*, we are unable to conclude that the trial court's findings were improper. Specifically, we disagree that the findings and injunction issued in *Fisk*, which was brought to halt construction of a bulkhead and thereby to protect beach rights, and not to determine precisely the scope of the lot owners' implied easements over the lawn, were such powerful evidence that the trial court was compelled to credit it. In short, because specific lawn

rights were not claimed or at issue in the case, the language on which the defendants rely was in the nature of dicta, and in the end, was inconclusive evidence as to the actual scope of the implied easement. Accordingly, the trial court was not obligated to make the inference argued by the defendants or to afford it controlling weight. Consequently, the defendants' second claim fails.

### III

The defendants claim next that the trial court improperly granted the McBurneys' motion in limine, thereby limiting the evidence regarding actual use of the lawn to that occurring between 1885 and the early part of the twentieth century. The defendants assert that the trial court abused its discretion by temporally limiting the evidence. We disagree.

The following additional procedural history is relevant. Prior to the evidentiary hearing held to determine the scope of the implied easement, the McBurneys filed a motion in limine requesting that the defendants be precluded from introducing any evidence of the defendants' use of the lawn, arguing that such evidence was irrelevant to the issue of Baker's intent when he created the implied easement in 1885. The trial court granted in part the McBurneys' motion, allowing the defendants to introduce evidence of the use of the lawn up to the early twentieth century as circumstantial evidence bearing on the intent of the parties. The defendants claim that this ruling was improper.

"A trial court may entertain a motion in limine made by either party regarding the admission or exclusion of anticipated evidence. . . . The judicial authority may grant the relief sought in the motion or other relief as it may deem appropriate, may deny the motion with or without prejudice to its later renewal, or may reserve decision thereon until a later time in the proceeding.

. . . [T]he motion in limine . . . has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial." (Citation omitted; internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Gilmore,* 289 Conn. 88, 127–28, 956 A.2d 1145 (2008). "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) Id., 128.

"[E]vidence is admissible only if it is relevant." (Internal quotation marks omitted.) *Higgins* v. *Karp,* 243 Conn. 495, 504, 706 A.2d 1 (1998). "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . The proffering party bears the burden of establishing [relevance]." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis,* 298 Conn. 1, 23, 1 A.3d 76 (2010).

The scope of an easement is determined by examining the instrument that created it and the circumstances that existed at the time of its creation. *Mandes* v. *Godik-*

*sen*, supra, 57 Conn. App. 83; 1 Restatement (Third), supra, § 4.1, comment (a), p. 498. In the case of an easement implied by the filing of a map, a court considers those circumstances to discern the intention of the parties to the original conveyance, and whether the easement was reasonably necessary for the use and normal enjoyment of the dominant estate. *McBurney* v. *Cirillo*, supra, 276 Conn. 800. With these principles in mind, we conclude that the trial court's partial granting of the motion in limine was proper.

Evidence of the lot owners' current use of the lawn, as well as use in other periods far removed in time from the creation of the implied easement, is not reasonably viewed as part of the surrounding circumstances. Moreover, such evidence is irrelevant to the question of the parties' intent and the original lot owners' reasonable expectations of use and enjoyment in and around 1885. The defendants concede that evidence of the intent of the parties must be limited to that arising around the time of the implied easement's creation, but argue that evidence regarding what is reasonably necessary for use and normal enjoyment of the dominant estate should not be similarly restricted. According to the defendants, the trial court should have considered evidence from the entire time period during which lot owners were making use of the lawn. We are not persuaded.[15]

The defendants' argument improperly splits the inquiry, suggesting that consideration of the parties'

---

[15] In their reply brief, the defendants also argue, for the first time, that the trial court should have allowed evidence of more recent use of the lawn, which would have tended to show that broader use of the lawn would not negatively affect the enjoyment or value of the waterfront lots. Because the defendants did not make this argument to the trial court when opposing the motion in limine, we do not address it. See *Forest Walk, LLC* v. *Water Pollution Control Authority*, 291 Conn. 271, 290–91 n.15, 968 A.2d 345 (2009) ("it is well settled that a [party] may not advance a new theory to this court for the first time on appeal").

intent may proceed independently from consideration of the reasonable expectations as to use and enjoyment. In fact, the portions are intertwined, i.e., in the case of an easement implied by a map, what the grantor intends to convey, and what the grantee is justified in expecting to receive, is an easement that is reasonably necessary for the use and normal enjoyment of the dominant estate. See *Bovi* v. *Murray*, 601 A.2d 960, 962 (R.I. 1992) ("[a]n implied easement is predicated upon the theory that when a person conveys property, he or she includes or intends to include in the conveyance whatever is necessary for the use and the enjoyment of the land retained"); see also 25 Am. Jur. 2d 517, Easements & Licenses § 19 (2004). Evidence of present, or relatively recent, actual use of the easement bears little relation to what was considered reasonably necessary for its use and normal enjoyment more than one hundred years ago. See 25 Am. Jur. 2d, supra, § 79, pp. 577–78 ("The extent of an easement created by implication generally is determined by the circumstances which existed at the time of conveyance and gave rise to the implication. Among these circumstances is the use being made of the dominant tenement *at that time*." [Emphasis added.]). As the trial judge reasoned, the approach advocated by the defendants would create a rule whereby "the parties, by their use, could either expand or contract the scope of the [implied] easement in contravention of the intent of its creator . . . ." We conclude that the trial court's decision to limit evidence to use of the lawn occurring between 1885 and the early twentieth century was not an abuse of discretion.[16]

IV

In its cross appeal, Beachcroft claims that a portion of the trial court's September 17, 2008 supplemental

[16] The trial court altered its original response to the motion in limine, which was to allow evidence of use occurring only between 1885 and 1900. Upon reflection, the trial court decided that the fifteen year time limit was too restrictive, stating, "it [would be] unwise to set an arbitrary cutoff date for such evidence."

orders was improper. Beachcroft contends that the trial court impermissibly broadened the scope of the implied easement it found in its original memorandum of decision by finding that the lot owners could pass over the lawn to reach areas other than the shoreline. We agree.[17]

As earlier explained in this opinion, the trial court found in its August 6, 2008 memorandum of decision that the defendants had "an implied easement only to pass and repass over the entire lawn . . . as a means of accessing the shoreline." According to the court, the parties to the conveyances creating the implied easements "could not have 'reasonably anticipated' the use of the lawn for any purpose other than to give them

---

[17] In its reply brief, Beachcroft appears to argue additionally that the trial court improperly failed to order that the defendants' access to the shoreline was limited to passing between lots 3 and 4 at the end of the avenue and descending "the stairs at the end of the grassy [a]venue extension." Beachcroft made this argument at the supplemental hearing, but the trial court rejected it, reasoning that the lawn historically had been "an undivided greensward in front of what is now Crescent Bluff Avenue and to the east and west of it, leading down to the shore," and, therefore, Baker intended lot owners to "have access to the entire shoreline by means of the lawn and the slope down to the shore." Although the trial court declined to limit the defendants' shoreline access to the aforementioned stairs, it nevertheless observed that it would be "foolish" for easement owners "to attempt access down the concrete slope and ramp in front of the McBurneys' property and the Lowlicht/Haedicke property or over the riprap in front of the Saggese property," and that those who chose to do so would proceed at their own risk.

If Beachcroft wished to contest this aspect of the trial court's supplemental orders, it was required to do so in its main brief and to afford the defendants an opportunity to respond. Because the claim has been raised for the first time in a reply brief, we will not address it. See *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 129 n.30, 998 A.2d 730 (2010) ("It is well established . . . that [c]laims . . . are unreviewable when raised for the first time in a reply brief. . . . Our practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." [Internal quotation marks omitted.]).

access to the shoreline." The trial court then delineated orders to give effect to this finding, including, in relevant part, that "[t]he defendants may use the easement across the lawn . . . solely for the purpose of passing to and returning from the shoreline . . . ."

The following additional procedural history is relevant. Following the hearing on the scope of the implied easement, the trial court deferred rendering a final judgment and ordered an additional hearing to address questions regarding who would be bound by the judgments and who would be responsible for maintaining the easement area. At the hearing on September 8, 2008, Beachcroft's counsel made an oral motion for clarification of the court's decision, explaining that a rear lot owner had encountered opposition from one of the waterfront lot owners when she attempted to use the lawn to walk her dog to a vacant lot east of the development. On September 17, 2008, the trial court issued a supplemental memorandum of decision in which it stated that it did not intend "to limit the rear lot owners' right to pass and repass over the lawn only when they are on their way to the shoreline." Thus, it explained, "use of the lawn to pass over to properties to the east of [the] [a]venue, either to visit with a front lot owner . . . or to access open space or shoreline is included in the scope of the easement found by this court." The trial court delineated supplemental orders, including, in relevant part, that "the rear lot owners may use their easement across the lawn to pass and repass to property to the east of . . . [the] [a]venue, including any open space or alternate access to the shoreline . . . ."

Beachcroft now contests the foregoing portion of the supplemental orders as improper and requests that that portion be overturned. According to Beachcroft, no additional evidence was proffered at the September 8, 2008 hearing to justify the trial court's broader interpretation of the scope of the right-of-way, and the evidence

presented at the earlier hearing does not lend support to this portion of the supplemental orders, which is fundamentally inconsistent with the court's original order and the reasoning underlying it.[18] We agree.

This portion of the trial court's supplemental orders necessarily is premised on a factual finding that the parties to the original conveyances within the development intended to confer, or reasonably expected to receive, a right-of-way to access areas east of the development, because that right-of-way was reasonably necessary for the use and normal enjoyment of the property conveyed. See *McBurney* v. *Cirillo*, supra, 276 Conn. 800. A review of the entire record discloses no support for this finding and, therefore, it is clearly erroneous. *Slack* v. *Greene*, supra, 294 Conn. 427. Specifically, there was no evidence that, contemporaneously with the creation of the implied easement, people regularly used the lawn for this purpose. Although the Baker plan depicted the sound to the south of the lots, it did not indicate what properties existed beyond its eastern or western boundaries. Furthermore, although some of the deeds in evidence conveyed nonspecific rights-of-way, or rights-of-way to the sea or to the sea shore, none of the deeds included a right-of-way to property to the east of the development, or to access particular lots within the development. Indeed, the only evidence in the record as to what lay east of the development demonstrated that it was private property, not public open space or additional public access to the shoreline. Although it is reasonable to infer that access to a valuable amenity like the shoreline adjacent to the development was within the contemplation of the parties to

[18] Beachcroft also argues that this portion of the trial court's supplemental orders improperly was premised on arguments of counsel, rather than evidence, and is contrary to the doctrine of the law of the case. Because we agree that this portion of the orders lacks evidentiary support, we do not address these arguments.

the conveyances, the same cannot be said of a right to pass over to neighboring private property. Consequently, the portion of the trial court's supplemental orders permitting the use of the law to pass to areas other than the shoreline, which was dependent on this assumption, was improper and must be reversed.

The judgments are reversed solely as to the portion of the court's supplemental orders permitting the use of the lawn to pass to areas other than the shoreline; the judgments are affirmed in all other respects.

In this opinion the other justices concurred.

*(See Appendix next page)*

Appendix