## LOUIS A. FISK *vs.* FREDERICK LEY ET AL.

Third Judicial District, Bridgeport, October Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The terms of a deed which clearly include an entire tract of land, out of which a number of building lots are carved, are not to be controlled by a more limited boundary indicated by the marginal words on a plan of the lots deposited in the town clerk's office, to which the deed refers. Such reference may explain the arrangement of the lots, but does not limit the area of the land so conveyed.

A five-acre tract upon the north shore of Long Island Sound was divided into thirty-five building lots, a plan or map of which was filed in the town clerk's office, to which reference was made in the deeds describing and conveying these lots. Four of them, at the south end of the tract, faced the water and fronted upon an open space marked upon the plan as a " Lawn," and the other lots fronted upon either side of an open space called the " Avenue," extending from the " Lawn " north to a highway. The " Lawn " was a level, grassy piece of upland, about fifty feet in width, sloping down to a strip of beach some twenty feet below. *Held :—*

1. That the filing of the plan and the conveyances referring to it, annexed to each lot a right to use the " Avenue " and " Lawn," and to use the strip of beach above the water-line for all such purposes as might reasonably serve the convenience of the lot-owners.

2. That the defendants, who owned one or more of the front lots, might properly be restrained from rebuilding the sea wall on the shore in front of their lots, upon a new line and in such a way as to change existing conditions and thereby materially injure the enjoyment of the rights which the plaintiff, as an owner of several rear lots, had in the " Lawn " and " beach," especially as it appeared that the new wall could have been as readily built on the line of the old bulkhead.

3. That under such circumstances it was immaterial that the plaintiff was the only lot-owner who disapproved the proposed alterations and had not contributed, or offered to contribute, to the necessary expense of repairing the existing bulkhead.

4. That the comparative benefit or loss to the plaintiff from the proposed wall was immaterial, except in so far as it might influence the court in exercising its discretion as to granting an injunction.

5. That it was of no consequence in whom the legal title to the " Avenue," " Lawn," or beach, might be, since the plaintiff's right to relief did not depend upon such title but on his ownership of one or more of the building lots.

The plaintiff's title was derived through deeds from *B*, who was de-

scribed as trustee for certain persons named therein. *Held* that evidence that these beneficiaries in fact paid the purchase price of the entire tract conveyed to *B*, was properly excluded; also evidence that they did not know of or consent to the conveyance to the plaintiff, in the absence of proof or claim that the terms of the trust made such knowledge or consent necessary.

The plaintiff gave notice to the workmen building the wall to stop, and that he should procure an injunction, but did not notify the defendants. He waited two weeks before bringing the action, during which time the defendants expended a large sum in the work. *Held* that the notice, having been given to the actual tort-feasors, was sufficient; and that the delay was not so great as to constitute the defense of laches.

The terms of the injunction prohibited the defendants from "substantially changing" the extent and character of the beach and the shore, or the grade of the lawn, and from erecting or maintaining a wall on the line on which it was being constructed, indicated by a red line on a map introduced as an exhibit, but preserved their right to erect a wall "along the line of the original former bulkhead." *Held* that this was sufficiently certain.

Where many are entitled to a common privilege, in order to protect which a large expense must be incurred, no one of them has an absolute right to prevent the others from providing such protection as may seem to them to be reasonable and proper, if it be such in fact.

Argued November 3d—decided December 18th, 1903.

Suit for an injunction to protect the plaintiff's enjoyment of certain rights in and to a strip of beach near his summer residence at the seaside; brought to the Superior Court for New Haven County and tried to the court, *George W. Wheeler, J.*; judgment for plaintiff, and appeal by defendants. *No error.*

*Talcott H. Russell* and *Harry W. Doolittle*, for the appellants (defendants).

*Edmund Zacher*, for the appellee (plaintiff).

BALDWIN, J. In 1885 a five-acre tract of land situated in Pine Orchard was conveyed to "Ellis B. Baker, Trustee," by deed bounding it north on a highway and "south by the sea or Long Island Sound," and describing it "as shown on a plan deposited with the town clerk of Branford, marked

' Plan of 35 building lots belonging to Ellis B. Baker, Trustee, located at Pine Orchard, Branford, Conn.' " The plan so filed showed that the tract was a long and narrow strip of upland about 220 feet in width, laid out into lots of nearly equal size on each side of an open space marked " Avenue " leading from the highway to an open space on which the four southerly lots faced, marked " Lawn." The southerly boundary of the " lawn " was an irregular line substantially parallel to and some 40 feet distant from a line below which was marked " Long Island Sound." On the margin of the plan was written the following: " West boundary, commencing at stone 1 on line, runs north 881 ft. to roadway, stone 3—thence southeast at angle of 59° to post 4 on roadway and line east of property, thence south 630 ft. to post 2 on east line, thence west 220 ft. to west line post 1." Each lot was numbered. Those facing the lawn on the west of the " Avenue " were numbered 2 and 4, lot 4 being the lot next to it. Lots 3 and 1 were on the other side of it, lot 3 being next to it. Lots 1 and 2 were only accessible by going over the " lawn."

Although the boundary indicated on the plan by the marginal words above quoted, included nothing south of the 35 building lots, this cannot control the express terms of the deed, which clearly include the whole tract out of which they were carved. *Merwin* v. *Wheeler*, 41 Conn. 14, 26. The reference to the plan was made to explain the arrangement of lots; not to limit the area of the land conveyed.

The " lawn " was a level, grassy piece of upland, not over 56 feet in depth at any point, terminating in a slope leading down to the beach, which was some 20 feet below. Prior to July 5th, 1892, a wooden bulkhead, five feet high above the beach, had been built to protect this slope, and on top of it and extending back a short way was a board walk, forming part of a walk of similar construction running for a quarter of a mile on each side of the tract in question. This walk was supported throughout its entire length by a wooden bulkhead built on a uniform curve, and was used by the general public.

On July 5th, 1892, Baker, as trustee, conveyed to F. E. Drake, trustee, lot 36, together with " the avenue and common lawn, with all improvements thereon, viz., summerhouse, flagstaff, bulkhead, and stairs, and all other property belonging to said E. B. Baker, Trustee for E. B. Baker, Harriet A. Fuller, and A. M. Young, located at Pine Orchard, Branford, Connecticut, as shown on a plan deposited with the town clerk of Branford marked ' Plan of 35 building lots belonging to Ellis B. Baker, Trustee, located at Pine Orchard, Branford, Connecticut.' " Drake, describing himself as trustee for the same parties, afterwards conveyed these premises to Prosper Istas, trustee. Istas, in 1901, conveyed them by warranty deed from himself individually to the plaintiff; and in 1903, pending this action, Istas, as trustee, executed and delivered another warranty deed of them to him.

The plaintiff also acquired title individually, in 1901, under Baker, trustee, through sundry mesne conveyances, to four other of the lots, all said conveyances describing them by reference to the plan on file.

In 1893, the bank and bulkhead in front of the " lawn " having been partly washed away, the bulkhead was rebuilt on the new line made by the washout, making a jog of 4 feet at its intersection on the west with the center line of the " Avenue " projected. A wharf, reached by a stairway from the " lawn," had been constructed on this center line. The new bulkhead was a foot or two lower than the former one, and was connected with the bulkhead and walk on either side by stairs.

Shortly before January, 1903, the bulkhead, as thus reconstructed, became dilapidated, and it was necessary to protect the " lawn " by a new embankment. Up to that time the owners of the four lots fronting on the " lawn " had always taken care of it, cut the grass, and made whatever repairs of the bulkhead were needed. The defendant Ley was one of them. They now, without consulting the plaintiff, began the construction of a substantial granite wall to replace the wooden bulkhead. Such a wall had already been built to replace

the original wooden bulkhead for a space of a quarter of a mile on each side of the five-acre tract, by the owners of the shore lots. The line of the wall which the defendants proposed to construct did not follow exactly the line of the original bulkhead in front of the "lawn," and varied substantially from that of the line of the bulkhead as reconstructed in 1893, being run nearer to the water. It corresponded with the lines of the similar wall on either side, and made part of the same curve. The wall was to be raised to the same level as that of the adjoining walls, thus dispensing with any stairway in the public walk on top. It would protect the bank better than a wooden bulkhead ; make the walk safer ; be of general advantage to the owners of all the thirty-five lots ; and increase the value of their property. The real purpose, however, of the front lot owners in selecting the new line, was to increase the extent of the "lawn" and secure as large a measure of benefit for themselves as possible. For this purpose, they proposed, as part of their scheme of improvement, to change the level of the "lawn" ; carrying back the top of the slope so as to make that occupy half the "lawn," which would conform to the manner in which the adjoining ground on the east is graded. This would make the use of the "lawn" less convenient for the owners of the rear lots, who have been accustomed to bring out chairs and sit there. On the other hand, it would render it easier to keep the grass in good order, and prevent washouts, such as in the past have occasionally gullied the bank. There would have been no difficulty in building the stone wall on the line of the old bulkhead. Had it been so built there would have been no lack of beauty in the wall, nor of security, nor any appreciable break in the curve, nor any difficulty in making a junction with the new wall on the east and west; nor would a wall so built have been inferior to the proposed wall in utility; but it would have been a little more expensive. Building on the proposed line takes in a large strip of the beach, injures seriously this beach as a bathing beach and as a playground for children, prevents its use for the hauling out of boats, makes it dangerous for the an-

chorage of boats, and in these respects injures the plaintiff through his ownership of these lots, and damages their value, which is upwards of $1,500, and dependent largely upon this beach and the right to its use. The water at high tide would come up to such a wall, whereas it never came up to the old bulkhead except in an extraordinary tide, which was infrequent.

Upon these facts, which appear from the finding of the trial court, an injunction was properly granted.

The filing of the plan in the town clerk's office, and the conveyances referring to it, annexed to every lot a right to the use of the "avenue" and "lawn"; to go over them to the Sound; and to use the strip of beach between the foot of the bank and the water for all such purposes as might reasonably serve the convenience of an adjoining proprietor. *Pierce* v. *Roberts*, 57 Conn. 31. Whether the benefit to the plaintiff from the proposed wall might be greater or less than his loss by it is immaterial, except so far as it might influence the court in exercising its discretion as to granting the extraordinary remedy of an injunction.

The circumstances show a condition of things in which great weight could be properly given to the preferences of the plaintiff. His legal title to the enjoyment of a considerable part of the common beach was threatened. He set more value on that than on the extension of the "lawn," the improvement of its slope, or any of the other benefits which he might receive at the cost of others. The tastes and pleasures of those who pass the heat of summer at a seaside cottage naturally vary. To one, sitting quietly upon a shady lawn and enjoying the prospect may be the greatest attraction, while another will make more use of the beach and the water. The plaintiff was apparently one of the latter class, and an injunction was his only adequate remedy to preserve his rights. *Wheeler* v. *Bedford*, 54 Conn. 244, 248.

He was not debarred from claiming it, because he was the only lot-owner who was dissatisfied with the proposed changes. Had it been impracticable or unreasonably expensive to construct the new wall without enclosing the strip of

beach in question, another result might have been reached. If in such case, there had been a difference of opinion between the parties in interest, it may be that the preferences of those owning a majority of the lots should be allowed to control. Where many are entitled to a common privilege, in order to protect which a large expense must be incurred, no one of them has an absolute right to prevent the others from providing such protection as may seem to them to be reasonable and proper, if it be such in fact.

Evidence was offered by the defendants to show that the parties named in the deeds from Baker, trustee, and Drake, trustee, as those for whom they were trustees, did in fact furnish the purchase money with which Baker procured the original tract. There was no error in excluding this. It did not tend to show that, so far as the defendants were concerned, these trustees could not convey an absolute title, and it was not disputed that as to four of the lots a paper title of that description was vested in the plaintiff.

The defendants also offered evidence to show that the parties so named as beneficiaries of the trust, in the deeds under which the plaintiff claimed title to such lots, had never known or consented to such conveyances. There was no error in excluding it, in the absence of proof or claim that the terms of the trust made such knowledge or consent necessary.

Evidence was also excluded which was offered by the defendants to show that the deed to the plaintiff by Istas, trustee, executed in 1903, was given without the consent of the parties whom it described as those for whom he was trustee. This conveyance was made pending the suit; but if it could avail to enlarge the plaintiff's rights, he did not need its assistance, since he sues as an individual proprietor and not for the enforcement of any rights belonging to a trustee. The exclusion of this evidence was therefore of no injury to the defendants. The Superior Court was right in holding that title under this deed was not material to the plaintiff's case, and that it was of no consequence in whom the legal title to the " avenue," "lawn," and beach, might be.

For similar reasons, evidence that the parties so named in the deed did not consent to the institution of this suit, nor wish an injunction granted, was properly excluded.

To meet the defendants' claim that the deed of 1903 was invalid, because purporting to convey a title free of any trust, the plaintiff was allowed to show that Baker had, as trustee, conveyed in 1891 a ten-foot strip of the " lawn " in front of lot 3 to the owner of that lot. If the plaintiff's rights under the deed of 1903 had been material, this evidence would have been proper; since in the absence of any direct proof as to the terms of the trust, they might have been inferred from acts of the parties to it, sanctioned by long acquiescence on the part of the lot-owners. As his rights under the deed were not material, the evidence which he adduced was immaterial also, but could do the defendants no harm.

Other rulings on evidence were made grounds of appeal, but were so plainly correct as to require no discussion.

As soon as the plaintiff heard that the construction of the wall complained of had been begun, he visited the spot, and notified the workmen whom he found there to stop work, telling them that if they did not he should apply for an injunction. It did not appear that they informed their employers of this interview; and the work went on as before. Two weeks later the suit was brought, a large expense having been meanwhile incurred by the defendants.

It is contended that the plaintiff, having given no direct notice to them, having delayed suit for a fortnight after he knew that the wall was being built, and having never himself contributed nor offered to contribute to the expenses necessary for the reparation or replacement of the bulkhead, was estopped from asking an injunction. There is nothing in this claim. Notice to those whom he found actively engaged in the violation of his rights was sufficient. He was not bound to inquire who their employers were. His suit was not unreasonably delayed. Nor because he had done nothing himself to restore or replace the dilapidated bulkhead, were other lot-owners, who had never sought his assistance or consent, authorized to restore or replace it on an improper line.

The injunction granted was against " substantially chang-
ing the extent and character of the beach and the shore of
the beach in front of said lawn, or of the grade of said lawn
and said avenue, and from erecting and maintaining a wall
upon said shore and said beach in the location marked upon
Exhibit 5 by the red line, and from continuing the erection
of the wall upon said beach, or maintaining said wall in the
location it now is and is being placed," provided that " noth-
ing herein shall be construed to prevent the erection of a sea
wall along the line of the original, former wooden bulkhead
nor from changing the grade of the lawn so as to make it uni-
form to the wall so erected along the original, former wooden
bulkhead, provided such change shall not substantially in-
terfere with the use of the lawn by the plaintiff and the other
lot owners."

It is assigned for error that the terms of this judgment
are uncertain and such as to invite future litigation. The trial
court was not bound to assume the office of a civil engineer,
and determine precisely the lines and grades that might be
adopted, nor are the defendants in a position to complain
that instead of forbidding any changes of those formerly ex-
isting, it only forbade substantial ones. The phrase " orig-
inal, former wooden bulkhead " accurately described the
bulkhead as it stood prior to 1893.

There is no error.

In this opinion the other judges concurred.