******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BARBARA SAGGESE *v.* BEAZLEY COMPANY
REALTORS ET AL.
(AC 35471)

Alvord, Keller and Harper, Js.

*Argued December 1, 2014—officially released March 10, 2015*

(Appeal from Superior Court, judicial district of
Fairfield, Hon. Richard P. Gilardi, judge trial referee.)

*Charles D. Ray*, with whom, on the brief, was *Lee
Friend Lizotte*, for the appellant (plaintiff).

*Michael C. Conroy*, for the appellees (defendants).

*Opinion*

HARPER, J. This fraudulent nondisclosure appeal arises out of claims made by the plaintiff purchaser of shoreline real property against the defendant real estate broker and its defendant agent who represented the sellers of the property. The plaintiff predicated her claim on the defendants' failure to disclose the "entire content" of a letter they received from a law firm representing a third party, which included a reference to a 1903 Supreme Court case concerning use of the common lawn in the subdivision where the property the plaintiff purchased is located.[1]

The plaintiff, Barbara Saggese, appeals from the judgment of the trial court rendered in favor of the defendants, Beazley Company Realtors (Beazley) and its agent, Kathleen Greenalch. On appeal, the plaintiff claims that the trial court (1) failed to apply the proper legal standard when adjudicating her fraudulent nondisclosure claim, and consequently, (2) failed to adjudicate her Connecticut Unfair Trade Practices Act (CUTPA) claim.[2] We affirm the judgment of the trial court.[3]

In July, 2003, the plaintiff purchased property consisting of a house and land located in the Crescent Bluff subdivision (subdivision) in the Pine Orchard District in Branford. The property is depicted as Lot 3 on the subdivision plan (Baker map) and is situated on the southern end of Crescent Bluff Avenue (avenue), on the east side of the street. See appendix to this opinion. The plaintiff claims that at the time she purchased Lot 3, she believed that Lot 3 "ran from the house, south to Long Island Sound." She understood that residents of the subdivision could pass over the lawn between Lots 3 and 4 to get to the Sound, but she did not know that residents of interior lots had the right to pass over the lawn between Lot 3 and the Sound. After she purchased Lot 3, the plaintiff claims that she observed her neighbors setting up barbeque grills and blankets on what she considered to be her lawn. The plaintiff communicated with her real estate attorney, William J. Varese, and her real estate agent, Karen Stephens, and allegedly *then* learned that she did not own all of the lawn between Lot 3 and the Sound.

The plaintiff commenced the present action against the defendants in June, 2004, and filed an amended three count complaint on September 10, 2004, in which she alleged fraudulent nondisclosure, violation of CUTPA, and negligence against the defendants.[4] At trial, the plaintiff claimed, among many other things, that the defendants knew when they listed Lot 3 for sale that owners of interior lots had a right-of-way to cross the lawn in front of Lot 3 but failed to disclose that fact to her. Moreover, the plaintiff claimed that the defendants were in possession of a letter from the law firm of Robinson & Cole, LLP, advising them of pending litiga-

tion (*McBurney* litigation) regarding the right of residents of the subdivision to use the lawn and the case of *Fisk* v. *Ley*, 76 Conn. 295, 56 A. 559 (1903).[5] She alleged that, despite informing her of the *McBurney* litigation, the defendants fraudulently failed to disclose the entire content of the Robinson & Cole letter, particularly the reference to the *Fisk* case.

The court tried the case over several days between November 3, 2011, and March 15, 2012, and issued a corrected memorandum of decision on April 1, 2013. The court concluded that the plaintiff had failed to carry her burden of proof with respect to her claim of fraudulent nondisclosure. Because the plaintiff's CUTPA claim was predicated on her claim of fraudulent nondisclosure, the court rendered judgment for the defendants on the CUTPA claim without further analysis. The court denied the plaintiff's motion to reargue and for reconsideration. Thereafter, the plaintiff filed the present appeal.

The plaintiff's issue on appeal concerns her allegation that, prior to closing the sale of Lot 3, Greenalch failed to disclose to her the entire content of the Robinson & Cole letter, particularly the substance of the *McBurney* litigation claims and the *Fisk* case. The plaintiff alleged that as a result of the defendants' fraudulent failure to disclose the entire content of the Robinson & Cole letter she suffered loss and damage in that the value of Lot 3 "was substantially less than the price she paid, and she will incur expenses for surveys, appraisals, title searches, attorney fees and other costs."[6]

In their brief, the defendants contend that, despite the plaintiff's claims that they failed to disclose material facts to her regarding the right of residents of the subdivision to cross and use the common lawn, the plaintiff, Stephens, and Varese were in possession of those facts and information regarding the lawn prior to the closing of the sale of Lot 3. Moreover, the defendants assert that the plaintiff did not rely to her detriment on the defendants' failure to provide her with the entire content of the Robinson & Cole letter. We agree with the defendants that the plaintiff was in possession of information concerning the subdivision residents' claimed right to use the common lawn in front of Lot 3 and that they did not fail to disclose material facts to the plaintiff prior to her purchase of Lot 3.

I

TRIAL COURT'S DECISION

A

Factual Findings

The following historical facts, as found by the court, are relevant to the plaintiff's claims on appeal.[7] In July, 1885, Ellis B. Baker, trustee, filed the Baker map in the Branford land records, and the Baker map has been

referenced in every deed of conveyance regarding lots in the subdivision since 1885. The Baker map depicts a subdivision plan consisting of thirty-five residential lots with an avenue, presently called Crescent Bluff Avenue, that runs from the northern boundary of the subdivision between the lots to an open area identified on the Baker map as a "lawn" at the southern boundary. Four lots at the southern end of the subdivision border the lawn and are designated as Lots 4 and 2 on the western side of the avenue and Lots 3 and 1 on the eastern side. The lawn encompasses the entire width of the southern part of the subdivision with an irregular border along the Sound. See appendix to this opinion. The court found that since the subdivision was established, the residents have used the lawn to access the slope to the beach and Sound.

The court found the following facts that underlie the present litigation. In 2003, Joseph Millerick and Juanita Millerick (Millericks) owned 1 Crescent Bluff Avenue, which is also known as Lot 3 on the Baker map.[8] When they decided to sell Lot 3, the Millericks contacted Greenalch, who has been a licensed real estate agent for forty years and specializes in the sale of shoreline property. The Millericks signed a listing agreement with Beazley on March 10, 2003, placing Lot 3 on the market for $1,990,000.

Greenalch was familiar with Lot 3 and knew that residents of the subdivision crossed the subdivision lawn to and from the Sound. Prior to listing Lot 3 for sale, she went to the Branford tax assessor's office to consult the assessor's map, which described Lot 3 as "waterfront," 0.203 acres. Greenalch, therefore, advertised Lot 3 as direct waterfront property and identified its location within the subdivision by referencing the Baker map.

After listing Lot 3 for sale in March, 2003, Beazley received a letter from the law firm of Robinson & Cole, LLP, stating that the firm represented Leslie Carothers of Crescent Bluff Avenue.[9] The firm understood that Beazley had listed property on the avenue for sale and it assumed that Beazley was aware of "claims of access to Long Island Sound, to the Lawn, and to an unobstructed view of the shoreline on behalf of property owners on Crescent Bluff Avenue."[10] The letter concluded by stating that Robinson & Cole, LLP, was putting Beazley "on notice in the event that you are not [aware]" and opining that "a buyer should be made aware of these claims" and the *Fisk* case.

The court found that the defendants did not have "any idea" what the Robinson & Cole letter was about. Greenalch, therefore, took a copy of the letter to Joseph Millerick, who informed her that the Millericks were not parties to the litigation, that there was nothing to be concerned about, and that he would take care of it through his lawyer.

As to the plaintiff's purchase of Lot 3, the court found that the plaintiff had been looking to purchase property on the shoreline. Before she knew that Lot 3 was for sale, the plaintiff and Stephens had viewed one of the interior lots on the avenue that was offered for sale and were advised that all residents of the subdivision used the lawn located at the southern end of the avenue to access the Sound. The plaintiff and Stephens drove to the southern end of the avenue, saw that Lot 3 was for sale, and made arrangements to view it.

The court found that during their initial inspection of Lot 3, Greenalch had stated to the plaintiff and Stephens that Lot 3 did not include the common lawn and that she had walked the dimensions of Lot 3 with them.[11] When Joseph Millerick met the plaintiff, he stated two things to her: (1) the house needed a new roof, and (2) he did not own the land in front of the house. Greenalch, Stephens, and the plaintiff had a discussion about a survey of Lot 3. The plaintiff wanted to determine exactly what land came with Lot 3, as there had been some discussion about a common lawn and the right of others to use it. Stephens assumed, at the time, that if there were any issues concerning the property lines, they would be discovered during the title search. The court found that, at trial, the plaintiff could not recall being informed that Lot 3 did not include the lawn, although *she admitted that Greenalch never represented* to her that the lawn south of Lot 3 was included in the sale. At trial, Stephens confirmed that Greenalch never indicated that the property included the lawn south of Lot 3.

Moreover, the court found that the plaintiff had read real estate brochures describing Lot 3 as direct waterfront property and that she had assumed that the description meant Lot 3 included all the land to the Sound. The plaintiff observed and was advised several times that residents of the subdivision used the lawn to access the beach. During a second meeting with the plaintiff, Stephens, Greenalch, and the Millericks, Juanita Millerick stated that the neighbors have a right to use the lawn to get to the beach and stairs to the water. In response to a question from the plaintiff, Juanita Millerick stated that sometimes people walk on the lawn in front of the house, subdivision residents were always cordial, used the lawn south of Lot 3 only to access the slope and stairs, and that there never was any congregating.

The court found that the plaintiff submitted an offer to purchase Lot 3 for $1.4 million. The defendants returned the offer to purchase with a notice, stating "this is to inform you that there is pending litigation regarding property adjacent to the water in front of the residences on the West side of Crescent Bluff Avenue." Stephens or Varese returned the offer to purchase to the defendants stating under additional terms and con-

ditions: "Buyer to be given satisfactory information about pending litigation."[12] Greenalch referred the issue of pending litigation to the Millericks and their attorney, J. Michael Suzlbach, for a response.

In a June 18, 2003 letter, Sulzbach stated to Varese: "Pursuant to paragraph 1 of the Addendum to the Sales Agreement dated June 9, 2003, please accept this letter as confirmation that Joseph Millerick is not a party to any pending litigation concerning Crescent Bluff. The cases which are presently pending in the Superior Court for the Judicial District of New Haven at New Haven . . . relate to disputes between the owners of 2 Crescent Bluff and 6 Crescent Bluff and several owners of property situated on Crescent Bluff Avenue north of the waterfront homes."[13] The court found that Varese had several conversations with Sulzbach concerning the *McBurney* litigation, in which Sulzbach informed Varese of the common lawn historically used by subdivision residents to access the Sound. Varese, however, never communicated with any of the attorneys representing the *McBurney* litigants to determine the issues involved in the litigation, although the litigation concerned the western portion of the common lawn. The court found that Varese confirmed to the plaintiff and Stephens that the *McBurney* litigation had nothing to do with Lot 3 and that neither the plaintiff, nor Stephens, nor Varese ever expressed dissatisfaction with the adequacy of Sulzbach's response to the amendment to the sales agreement. See footnote 12 of this opinion.

The court found that prior to the closing of sale, Varese reviewed a copy of the Baker map, the appraisal of Lot 3, the title search, the proposed deed to the plaintiff, and the deed conveying title to Lot 3 to the Millericks. The court found that the appraisal described Lot 3 as "sub/shared waterfront." The title search stated that Lot 3 was subject to "littoral rights of others into Long Island Sound" and that the "house is bounded on the south 'by common lawn and shown on [Baker] map, 45 feet.' " Moreover, the Millericks' proposed deed stated that the forty-five foot southern boundary of Lot 3 consisted of a lawn, not the Sound, and that the deed by which the Millericks took title to Lot 3 described its southern boundary as a "common lawn" and referred to the 1885 Baker map.[14] The court found that Varese and the title searcher had assumed that the common lawn was shared by only Lots 3 and 4, and that Varese had told the plaintiff that the title search "came out fine." At the time of closing on July 11, 2003, neither the plaintiff, nor Stephens, nor Varese, had questions regarding Lot 3.

As to whether the defendants fraudulently failed to disclose the entire content of the Robinson & Cole letter to the plaintiff, the parties presented expert testimony at trial. The court found that the plaintiff's expert, Laureen Rubino, acquired her real estate license in 2009.

Rubino criticized Greenalch for not giving the entire content of the Robinson & Cole letter to the plaintiff, particularly the reference to the *Fisk* case. She opined that the notice referencing pending litigation that the defendants gave to the plaintiff when they returned her offer to purchase violated the standard of care. She testified that although the notice was accurate, it did not disclose the use of the common lawn. Rubino admitted, however, that Greenalch was not an appraiser, a title searcher, or an attorney.

Barbara Fairfield testified as the defendants' expert. The court found that she had thirty-two years of experience in real estate and owns a business that conducts courses to elevate the understanding and knowledge of real estate agents, including all aspects of working with a seller client. With respect to the portion of the Robinson & Cole letter that instructed the defendants to advise a prospective buyer of Lot 3 of the *Fisk* case, Fairfield opined that a real estate agent has no responsibility to follow instructions from an attorney for a third party. The standard of care does not require a seller's agent who receives a letter, such as the one from Robinson & Cole, LLP, stating that there may be a 100 year old case that somehow impacts the right of people on the avenue to use the lawn, to reveal automatically the letter to any prospective buyer. Whether the entire content of the Robinson & Cole letter constitutes a material fact that a seller's agent must disclose requires legal analysis. In this case, Greenalch took the letter to the Millericks and asked them if the litigation affected Lot 3. Joseph Millerick told her the letter had nothing to do with Lot 3. According to Fairfield, by going to the Millericks, Greenalch complied with the standard for a seller's agent.

The court also made findings of fact regarding the *McBurney* litigation.[15] In *McBurney I,* our Supreme Court determined that the litigation was limited to land described as the second parcel on the western side of the avenue, but determined that there was an undelineated implied easement over the common lawn that would affect all owners of property in the subdivision. See *McBurney* v. *Cirillo,* 276 Conn. 782, 789 n.9, 792–98, 889 A.2d 759 (2006) (*McBurney I*), overruled in part on other grounds by *Batte-Holmgren* v. *Commissioner of Public Health,* 281 Conn. 277, 284–89, 914 A.2d 996 (2007). Our Supreme Court, therefore, remanded the case to the trial court to determine the scope of the implied easement and ordered that notice of the litigation be given to the owners of lots in the subdivision and that they be permitted to intervene. See id., 823. Subsequently, in *McBurney* v. *Pacquin,* 302 Conn. 359, 28 A.3d 272 (2011) (*McBurney II*), our Supreme Court affirmed the judgment of the trial court that determined that the owners of property in the subdivision have an implied easement to use the common lawn as a right-of-way to the Sound, but that it did not afford residents

"a right to recreate on the lawn." Id., 372. The trial court in the present case found that the implied easement to cross the common lawn existed on July 11, 2003, when the plaintiff purchased Lot 3.

## B

### Legal Conclusions

On the basis of its factual findings and relevant legal precedent, the court concluded that the plaintiff failed to satisfy her burden of proof as to her claim of fraudulent nondisclosure. The court found that the plaintiff was well aware that the property she was buying did not include the lawn south of the residence and that it was a common lawn used by the residents of the subdivision to go to and from the Sound. The defendants did not mislead the plaintiff to believe that Lot 3 included the lawn down to the Sound. The title search referenced the southern boundary of Lot 3 as "by common lawn, as shown on [the Baker map], 45 feet" and the "littoral rights of others into Long Island Sound." The appraisal listed Lot 3 as a "sub/shared waterfront." The deed conveying title to Lot 3 to the Millericks identified the southern boundary as a common lawn forty-five feet in length, and the deed from the Millericks described the southern boundary as the lawn. Moreover, the court found that the experts who testified on behalf of the plaintiff and the defendants opined that a review of the title search and deeds would put a potential buyer on notice that the buyer was not purchasing property that extended to the Sound.

The court concluded that anyone reviewing the Baker map would determine that the avenue and the common lawn located between the lots and the sound were created for the common use of all residents of the subdivision. In coming to that conclusion, the court quoted from *McBurney I*, to wit: "Consequently, a title researcher, reading the root of title [to Lot 4], namely, the 1950 conveyance from Moran to Walker—and, indeed, all of the subsequent conveyances—would have been obligated to examine the Baker [map]. Indeed, the plaintiffs' own title expert testified accordingly. Although we agree that . . . a title searcher would not have been obligated, solely by that examination, to discover this court's decision as reported in *Fisk* v. *Ley*, supra, 76 Conn. 295, he or she would have been duly charged with knowledge of the necessary legal consequences of what the Baker [map] depicted. Put another way, *a title searcher, having been alerted to the Baker [map] would be charged with knowledge of what it necessarily implied as a matter of law.* As we have explained, these necessary legal consequences were and are an implied easement over the second lawn parcel in favor of the rear lot owners." (Emphasis added.) *McBurney I*, supra, 276 Conn. 811.

The court further concluded that the defendants did

not mislead the plaintiff with respect to Lot 3. Prior to the closing, the plaintiff, Stephens, Varese, and the plaintiff's title searcher reviewed the Baker map. The court found that Varese and the title searcher assumed that the common lawn was shared by only Lots 1 and 3. The court concluded that if an attorney representing the buyer of Lot 3 were informed that the lawn between the property and the water was a "common lawn," the first priority should be to determine who has the common use of that property. On its face, "common use" could have been the right of the general public, citizens of Branford, residents of the Pine Orchard District, or, in this case, residents of the subdivision.

Having reviewed the Baker map, Varese knew that the residents of the subdivision used the lawn to access the Sound. The court found, according to our Supreme Court, that the Baker map delineates the avenue entering the entire lawn south of the subdivision, which leads to the conclusion that the avenue and lawn were created for the use of the residents of the subdivision. See *McBurney I*, supra, 276 Conn. 805. Prior to the closing, Varese had read the appraisal that stated that Lot 3 was "sub/shared waterfront," the title search stated the southern border was the common lawn, the deed to the Millericks and the deed from them to the plaintiff stated that the southern boundary of Lot 3 was a common lawn. Although Varese had been given the docket numbers of the five cases comprising the *McBurney* litigation, which concerned use of the western portion of the common lawn, he never contacted any of the attorneys involved with the litigation to ascertain the nature of that litigation and the matters at issue.

Moreover, the court concluded that the defendants at all times conducted themselves within the standard of care required of a seller's real estate agent. At no time did the defendants intentionally or negligently withhold or fail to disclose material facts concerning the subject property to the plaintiff prior to closing. The court also concluded that the defendants were not required to turn over the entire content of the Robinson & Cole letter, including the reference to *Fisk* v. *Ley*, supra, 76 Conn. 295. The court ultimately concluded that Greenalch complied with her professional obligations as the listing agent for the seller of Lot 3, and her professional obligation did not extend to that of the plaintiff's attorney, title searcher, or real estate agent.

For the foregoing reasons, the court concluded that the plaintiff had failed to satisfy her burden of proof as to her claim of fraudulent nondisclosure.

II

THE PLAINTIFF'S CLAIM ON APPEAL

On appeal, the plaintiff claims that the court failed to apply the proper legal standard to her claim of fraudu-

lent nondisclosure.[16] We disagree.

The plaintiff argues that, despite accurately setting forth the elements of a claim of fraudulent nondisclosure, the court adjudicated her claim as if the only question were whether the defendants owed her a duty other than that of a real estate agent. She contends that her fraudulent nondisclosure claim is predicated on the defendants' two line notice concerning pending litigation regarding property adjacent to the water on the western side of the avenue that accompanied their return of her offer to purchase. The plaintiff further claims that when the defendants sent the notice, they were required to disclose the entire content of the Robinson & Cole letter, which referred "to neighboring property owner's claimed right to use the property's lawn at any time and for any purpose" and the *Fisk* case.[17] On appeal, the plaintiff contends that the court never addressed the defendants' alleged fraudulent nondisclosure by determining whether the entire content of the Robinson & Cole letter was a material fact.

In response, the defendants argue that the court properly applied the applicable standard of care and found that the defendants neither negligently nor intentionally failed to disclose material facts relevant to the sale of Lot 3. We agree with the plaintiff that the court never explicitly found whether the entire content of the Robinson & Cole letter was a material fact under the circumstances. In its lengthy memorandum of decision, the court concluded by implication that the entire content of the letter was not a material fact and, in any event, that the substance of the entire content of the letter was either known to the plaintiff or available to her and her agents upon reasonable inquiry.

We first set forth the applicable standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts as they appear in the record." *Waterbury* v. *Washington*, 260 Conn. 506, 576, 800 A.2d 1102 (2002).

"[W]hen the resolution of a question of law, such as the existence of a fiduciary duty, depends on underlying facts that are in dispute, that question becomes, in essence, a mixed question of fact and law. Thus, we review the subsidiary findings of historical fact, which constitute a recital of external events and the credibility of their narrators, for clear error, and engage in plenary review of the trial court's application of . . . legal standards . . . to the underlying historical facts." (Internal quotation marks omitted.) *Iacurci* v. *Sax*, 313 Conn. 786, 797 n.12, 99 A.3d 1145 (2014).

In the present case, the plaintiff does not claim that the court's findings of relevant facts are clearly erroneous. The plaintiff's claim therefore turns on whether the court properly applied the law.

"The essential elements of a cause of action in fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . All of these ingredients must be found to exist; and the absence of any one of them is fatal to recovery." (Internal quotation marks omitted.) *Harold Cohn & Co.* v. *Harco International, LLC*, 72 Conn. App. 43, 51, 804 A.2d 218, cert. denied, 262 Conn. 903, 810 A.2d 269 (2002).

"Fraud by nondisclosure, which expands on the first three of [the] four elements [of fraud], involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there was a duty to speak. . . . A lack of full and fair disclosure of such facts must be accompanied by an intent or expectation that the other party will make or will continue in a mistake, in order to induce that other party to act to her detriment." (Internal quotation marks omitted.) *Reville* v. *Reville*, 312 Conn. 428, 441, 93 A.3d 1076 (2014).

"Regarding the duty to disclose, the general rule is that . . . silence . . . cannot give rise to an action . . . to set aside the transaction as fraudulent. Certainly this is true as to all facts which are open to discovery upon reasonable inquiry. . . . [M]ere nondisclosure . . . does not amount to fraud. . . . To constitute fraud on that ground, there must be a failure to disclose known facts and, in addition thereto, a request or an occasion or a circumstance which imposes a duty to speak. . . . Such a duty is imposed on a party insofar as he voluntarily makes disclosure. A party who assumes to speak must make a full and fair disclosure as to the matters about which he assumes to speak." (Citations omitted; internal quotation marks omitted.) *Duksa* v. *Middletown*, 173 Conn. 124, 127, 376 A.2d 1099 (1977).

"Additionally, [t]he party asserting [a fraud] cause of action must prove the existence of the first three of [the] elements by a standard higher than the usual fair preponderance of the evidence, which higher standard we have described as clear and satisfactory or clear, precise and unequivocal." (Internal quotation marks omitted.) *Harold Cohn & Co.* v. *Harco International, LLC*, supra, 72 Conn. App. 51. "Proof by clear and convincing evidence is an intermediate standard generally used in civil cases involving allegations of fraud or some

other quasi-criminal wrongdoing, or when particularly important individual rights are involved." (Internal quotation marks omitted.) *State* v. *Davis*, 229 Conn. 285, 293–94, 641 A.2d 370 (1994).

"[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . Our Supreme Court has stated that the clear and convincing standard is a demanding standard that should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory." (Citation omitted; internal quotation marks omitted.) *Shelton* v. *Statewide Grievance Committee*, 85 Conn. App. 440, 443–44, 857 A.2d 432 (2004), aff'd, 277 Conn. 99, 890 A.2d 104 (2006). "Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous." (Internal quotation marks omitted.) *Trumbull* v. *Palmer*, 123 Conn. App. 244, 257, 1 A.3d 1121, cert. denied, 299 Conn. 907, 10 A.3d 526 (2010).

We conclude that the trial court properly found that the plaintiff failed to carry her burden of proof by clear and convincing evidence that the defendants engaged in fraudulent nondisclosure by failing to disclose known material facts or the entire content of the Robinson & Cole letter. As to the first element of fraud, i.e., whether the representation was untrue and known to be untrue by the party making it, the plaintiff herself admitted that Greenalch did not tell her that Lot 3 encompassed the common lawn. As to the second element, the court found that Greenalch did not understand the Robinson & Cole letter. Greenalch, therefore, could not have known whether the entire content of the letter was accurate or a material fact. The court found that Greenalch properly took the letter to the Millericks and consulted with them. She learned that the Millericks were not parties to the *McBurney* litigation and that the Millericks would have their attorney take care of the matter. We agree with the court that a real estate agent has no duty to follow the direction of an attorney representing a third party. Moreover, the representations made by Robinson & Cole, LLP, concerning the *McBurney* litigation and the *Fisk* case were subject to legal analysis and Greenalch is not an attorney.

In this case, we agree with the court that the facts that the plaintiff claims were material, but not disclosed by the defendants, were " 'open to discovery upon reasonable inquiry.' " *Duksa* v. *Middletown*, supra, 173

Conn. 127. After the plaintiff submitted an offer to purchase, Greenalch returned the offer with a notice stating "this is to inform you that there is pending litigation regarding property adjacent to the water in front of the residences on the West side of Crescent Bluff Avenue." The plaintiff returned the offer to purchase with additional terms: "Buyer to be given satisfactory information about pending litigation." The plaintiff and the Millericks later signed an addendum to the sales contract that stated: "Sellers to provide a written statement verifying that 1 Crescent Bluff is not involved with any pending litigation." Sulzbach provided Varese with the docket numbers of the five consolidated cases in the *McBurney* litigation, as stated in the Robinson & Cole letter. The substance of the *McBurney* litigation was open to discovery upon reasonable inquiry had Varese only communicated with any of the attorneys representing the parties involved in the litigation or gone to the courthouse in New Haven and reviewed the files. Moreover, the court found that Varese had reviewed the appraisal, the deed to the Millericks, the proposed deed to the plaintiff, and the Baker map that was referenced in the deeds. Varese, however, made certain assumptions about the common lawn, which were incorrect. He informed the plaintiff that the title search came out fine, and the plaintiff proceeded to close the sale.

For the foregoing reasons, we conclude that the court properly determined that the plaintiff failed to prove by clear and convincing evidence that the defendants failed to disclose to her a material fact about Lot 3. Greenalch had no knowledge of or about the *McBurney* litigation or the *Fisk* case and was not an attorney with the skills necessary to perform legal analysis to determine whether the representations in the Robinson & Cole letter were accurate or material to the sale of Lot 3. She, however, informed the plaintiff of the pending litigation concerning property on the west side of the avenue. Pursuant to the addendum to the sales agreement, the Millericks, through Sulzbach, provided the docket numbers of the pending *McBurney* litigation to the plaintiff's attorney, who through reasonable inquiry could have discovered the nature of the litigation and the rights of subdivision residents to use the common lawn. All of the material information was in the plaintiff's possession, but neither she nor her agents made proper use of it. That failure cannot be laid at the feet of the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.

*(See Appendix next page)*

Appendix

PLAN
35
Building Lots
belonging to
E.B.Baker, Trustee
located at
Pine Orchard
Branford Conn.

Scale 1 in. 36 ft.

[1] The common lawn in the subdivision has been the subject of prior litigation. See *McBurney* v. *Paquin*, 302 Conn. 359, 28 A.3d 272 (2011) (*McBurney II*); *McBurney* v. *Cirillo*, 276 Conn. 782, 889 A.2d 759 (2006) (*McBurney I*), overruled in part on other grounds by *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 284–89, 914 A.2d 996 (2007); *Fisk* v. *Ley*, 76 Conn. 295, 56 A.2d 559 (1903). The plaintiff, Barabara Saggese, commenced the present action in 2004. The scope of the easement over the common lawn in the subdivision was resolved in *McBurney II*, prior to the date the present case went to trial.

[2] See General Statutes § 42-110a et seq.

[3] We conclude that the court properly adjudicated the plaintiff's claim of fraudulent nondisclosure and, therefore, do not consider her claim that the court improperly failed to adjudicate her CUTPA claim, which is predicated on the claim of fraudulent nondisclosure.

[4] The plaintiff withdrew the negligence count before trial.

[5] In *Fisk*, in 1903, the owners of the lots abutting the lawn, including Frederick Ley, began to construct a wall to replace the damaged wooden bulkhead below the slope. The intended repair would have decreased the size of the slope where residents congregated and increased the size of the lawn. *Fisk* v. *Ley*, supra, 76 Conn. 298–99. "The 'lawn' was a level, grassy piece of upland, not over 56 feet in depth at any point, terminating in a slope leading down to the beach which was some 20 feet below." Id., 297. Louis A. Fisk, who owned one of the interior lots, and others, commenced an action to enjoin the repair. The trial court granted the injunction against "substantially changing the extent and character of the beach and the shore of the beach in front of said lawn, or of the grade of said lawn and said avenue . . . ." (Internal quotation marks omitted.) Id., 303. The judgment was affirmed by our Supreme Court. Id.

[6] At trial, however, the plaintiff stipulated that Lot 3 had not diminished in value since she purchased it. The plaintiff claimed that she was entitled

to the expenses she expended after she took possession of Lot 3. The court stated, however, that the remedy for fraudulent nondisclosure is rescission or actual damages.

[7] The court made lengthy and detailed factual findings relevant to the claims alleged in the plaintiff's amended complaint. Only the facts relevant to the plaintiff's claim on appeal are recited herein.

[8] The Millericks are not parties to this litigation. After selling Lot 3, they retired far from Connecticut. When the plaintiff threatened to sue them, they settled with her, rather than engage in litigation.

[9] The Robinson & Cole letter stated more fully:

"To Whom It May Concern:

"This firm represents Leslie Carothers, 22 Crescent Bluff Avenue, Branford, CT 06405.

"We understand that your company has listings on one or more properties on Crescent Bluff Avenue, including property of Dr. John Millerick at 1 Crescent Bluff Avenue.

"We assume that you are aware, as agents for the seller, of the claims of access to Long Island Sound, to the Lawn, and to an unobstructed view of the shoreline on behalf of property owners on Crescent Bluff Avenue.

"These claims are the subject of pending litigation in the Superior Court for the State of Connecticut. The pending litigation is in the five cases consolidated for trial under the caption Salvatore Verderame et al. v. James R.G. McBurney, et al., Docket No. CV-01-0453999-S, Superior Court, Judicial District of New Haven at New Haven. The document number of the other cases are: McBurney, et al. v. Cirillo, et al., Docket # CV-98-0414830; McBurney, et al. v. Baldwin, et al., Docket # CV-99-0422100; McBurney, et al. v. Verderame, et al., CV-99-0422102; and McBurney, et al. v. Paquin, et al., Docket # CV-01-0455411.

"We assume also that you are aware of the Connecticut Supreme Court case of Fisk v. Ley, 76 Conn. 295 (1903), which concerns the right of each lot owner on Crescent Bluff Avenue to pass over the street and the Lawn to the Sound, to use the Lawn, and to use the strip of beach.

"While we have assumed that your principal has made you aware of these claims and also of the Fisk v. Ley case, we write to put you on notice in the event that you are not. In our view, a buyer should be made aware of these claims, and of the Fisk v. Ley case. If you have any questions, please call."

[10] The court found that at all times relevant, James R.G. McBurney owned Lot 4 of the subdivision. After he purchased Lot 4, McBurney obtained title to the balance of the common lawn on the western side of the avenue down to the Sound (known as the second parcel). McBurney informed Joseph Millerick that he was having problems with subdivision residents who were using what he considered to be his land in front of Lot 4. McBurney instituted four lawsuits against some residents of the subdivision and an action was brought against him all concerning the second parcel.

The court found that the litigation referred to in the Robinson & Cole letter concerned the *McBurney* litigation, which involved McBurney's claimed ownership of the second parcel. Moreover, the court found that the Millericks were not parties to the *McBurney* litigation. See *McBurney I*, supra, 276 Conn. 788–89 ("Only the parties' interests in this second lawn parcel are at issue in these appeals. Put another way, the defendants did not challenge in the trial court and do not challenge on appeal the plaintiffs' ownership of and exclusive right to use the first lawn parcel, constituting the ten feet of lawn directly in front of lot 4. Only the second lawn parcel, constituting the remaining eight feet of lawn in front of lot 4 and the remaining strip of land in front of lot 4 lying between the lawn and the Sound, is at issue.").

[11] The court found that Greenalch later assumed that the plaintiff's offer to purchase Lot 3 was greatly reduced from the asking price because the lot did not include the common lawn.

[12] On June 9, 2003, the plaintiff and the Millericks signed an addendum to the sales agreement, which stated: "Sellers to provide a written statement verifying that 1 Crescent Bluff is not involved with any pending litigation."

[13] Sulzbach's letter to Varese included the case captions and docket numbers of each of the cases involved in the *McBurney* litigation, which were the cases identified in the Robinson & Cole letter. See footnote 9 of this opinion.

[14] Schedule A of the deed stated: "First piece: All that certain piece or parcel of land, situated in the Town of Branford, County of New Haven and State of Connecticut, known as #1 Crescent Bluff Avenue, being Lot #3 on a map entitled "Lot 1 'Baker Map' To be conveyed by Elsie S. Jones to William M. Thompson, Pine Orchard, Branford, Conn. April 1967, Scale

1"–20' " Walter B. Evarts, Land Surveyor #1340, Branford, Conn., on file in the Branford Town Clerk's Office, and bounded:

"Westerly: by Crescent Bluff Avenue, 110 feet;

"Northerly: by a portion of Lot #5 as shown on said map; 45 feet;

"Easterly: by Lot #1 as shown on said map; 110 feet;

"Southerly: by Lawn as shown on said map, 45 feet.

"Together with all right, title and interest, if any, in and to the Common Lawn, Beach Bank, and land lying above and below the waters of Long Island Sound, abutting said piece.

"Together with all right, title and interest, if any, in and to an additional 10' wide parcel lying southerly of Lot #3, more particularly bounded and described:

"Westerly: by Crescent Bluff Avenue, 10 feet;

"Northerly: by Lot #3 as shown on said map, 45 feet;

"Easterly: by property now or formerly of Johanna S. Crawford and Lucy Y. Noyes, 10 feet;

"Southerly: by Lawn as shown on said map, 45 feet.

"Together with the effect, if any, of a Water Line Easement and right of way for ingress and egress as set forth in a certain Warranty Deed recorded in Volume 209, Page 346."

[15] The docket numbers of the five consolidated cases comprising the *McBurney* litigation indicate that the first action was commenced in 1998. "Appellate courts may take judicial notice of files of the trial court in the same or other cases." *Stuart* v. *Freiberg*, 142 Conn. App. 684, 687 n.3, 69 A.3d 320, cert. granted on other grounds, 310 Conn. 921, 77 A.3d 142 (2013). The *McBurney I* opinion was issued in January, 2006.

[16] See footnote 3 of this opinion.

[17] In *McBurney II*, our Supreme Court settled the dispute regarding the scope of the easement residents of the subdivision have over the common lawn. Residents may cross the lawn to and from the Sound, but they have no right to use the lawn for recreational purposes. See *McBurney II*, supra, 302 Conn. 372.