******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## GERALD RINGEL ET AL. *v.* MARIA GENEDINA GOTTLIEB
### (AC 47321)

Moll, Cradle and Clark, Js.*

*Syllabus*

The plaintiff property owners appealed from the trial court's judgment defining the scope and location of an easement that granted the abutting defendant property owner right-of-way access across the plaintiffs' property to the beach and waters of Long Island Sound. The plaintiffs claim, inter alia, that the court improperly concluded that the warranty deed at issue clearly and unambiguously reserved a general beach easement for the defendant's use of the plaintiffs' property above the mean high water line. *Held*:

The trial court erred in concluding that the easement language in the warranty deed was clear and unambiguous, as the definition of "beach" in our case law is not consistent and both parties' interpretations of the term "beach" were reasonable, and, therefore, the language in the deed was ambiguous as to the easement's location and scope.

The trial court erred in making findings on the basis of claims that the defendant had withdrawn prior to trial, as the language of the parties' stipulation clearly expressed an intent to abandon their respective claims that the other party engaged in conduct that exceeded the scope of the easement or impeded the defendant's use of the easement, leaving only the scope and location of the easement as the sole issue to be adjudicated, and it was improper for the court to have ruled on issues beyond that.

Argued January 7—officially released July 22, 2025

*Procedural History*

Action seeking, inter alia, an injunction prohibiting the defendant from using the plaintiffs' property in a manner that exceeds the scope of an easement on the plaintiffs' property, brought to the Superior Court in the judicial district of Fairfield, where the defendant filed a counterclaim; thereafter, the case was tried to the court, *Hon. Barry K. Stevens*, judge trial referee; judgment for the defendant on the complaint and on

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

the counterclaim, from which the plaintiffs appealed to this court. *Reversed*; *new trial*.

*Joel Z. Green*, with whom, on the brief, was *Linda Pesce Laske*, for the appellants (plaintiffs).

*James M. Nugent*, for the appellee (defendant).

*Opinion*

MOLL, J. In this property dispute, the plaintiffs, Gerald Ringel and Wanda Ringel, appeal from the judgment of the trial court, rendered after a bench trial, in favor of the defendant, Maria Genedina Gottlieb. On appeal, the plaintiffs claim that the court erred by (1) holding that the warranty deed at issue clearly and unambiguously reserved a general beach easement for the defendant's use of the plaintiffs' property above the mean high water line and (2) making findings and issuing orders pertaining to claims that the defendant had withdrawn prior to trial. We agree and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history, as set forth by the trial court or as are undisputed in the record, are relevant to our resolution of this appeal. The plaintiffs own property located at 1205 Fairfield Beach Road in Fairfield. The defendant owns property located at 1206 Fairfield Beach Road in Fairfield.

"Before the parties' ownership [of their respective properties], both the plaintiffs' property and the defendant's property were owned by Joseph and Alice Badolati. On July 2, 1969, the Badolatis executed a warranty deed [(deed)] conveying 1205 Fairfield Beach Road to the plaintiffs, while retaining ownership of 1206 Fairfield Beach Road. . . . After this conveyance, the Badolatis' daughter, Carole Anne Quinn, acquired title to and resided at 1206 Fairfield Beach Road. The defendant acquired title to 1206 Fairfield Beach Road on August 1, 2019, pursuant to an executor's deed executed

by Kathleen Quinn, executor of the last will and testament of Carole Anne Quinn." The deed contains an easement, which provides: "The premises are conveyed subject to the Grantors reserving for the benefit of themselves, their heirs, successors, assigns, occupants and tenants of premises across Fairfield Beach Road, Fairfield, Connecticut, known as [1206][1] Fairfield Beach Road, Fairfield, Connecticut, the title to which premises is being retained by the Grantors herein an easement over the westerly portion of the premises being conveyed herein. This easement [is] to be used as a Right-of-Way for access to the Beach and Waters of Long Island Sound. In addition, there is reserved to the Grantors and their heirs, successors, assigns, occupants and tenants full boating and swimming rights and other normal uses." (Footnote added.) Thus, "[t]he defendant's property abuts the plaintiffs' property, and . . . the plaintiffs' property is burdened by an easement for the benefit of the defendant's property."

In September, 2021, the plaintiffs commenced this action against the defendant. On January 10, 2022, the plaintiffs filed a second amended verified complaint (operative complaint), in which they alleged that the defendant used the easement in a manner that exceeded the scope of the easement and constituted both a nuisance and a trespass on the plaintiffs' property. The defendant subsequenty filed (1) an answer in which she denied the plaintiffs' claims and (2) a counterclaim seeking an injunction in which she alleged, inter alia, that the plaintiffs "significantly impeded [her] use of the easement and ha[d] severely interfered with [her] ability to peacefully use and enjoy the beach." On

____

[1] The deed identified the dominant estate as 134A Fairfield Beach Road in Fairfield. However, since the creation of the deed, the numbering of the lots on Fairfield Beach Road has changed, and 134A Fairfield Beach Road has become 1206 Fairfield Beach Road.

November 15, 2022, the plaintiffs filed an answer deny-
ing the material allegations of the defendant's counter-
claim. As the trial court, *Hon. Barry K. Stevens*, judge
trial referee, stated in its decision, "[b]oth parties [sought]
injunctive relief enjoining the conduct that they respec-
tively claim[ed] impair[ed] the proper or appropriate
use of the easement."

Prior to trial, the parties narrowed the disputed issues
by way of a stipulation, which states in relevant part:
"The evidence at the trial in this action shall be limited
to documents and testimony that are relevant to the
court's determination of the scope and interpretation
of the easement . . . ."[2] In pursuit of that goal, the
parties agreed that they would not present evidence
"as to any conduct by any party, including their families,
guests, tenants and invitees, concerning any alleged
violations of the easement . . . ." The parties further
agreed that they "each acknowledge that they shall
respect and shall not interfere with the rights of the
parties to use and enjoy the plaintiffs' property or any
right conferred by the easement, all as determined by
the court." Thus, as the court stated, "the sole issue
presented for the court's adjudication concern[ed] the
scope and location of the . . . easement."

On July 28, 2023, the matter was tried to the court.
The court admitted into evidence several exhibits and
heard testimony from several witnesses. Thereafter,
both parties filed posttrial briefs.

On January 11, 2024, the court issued a memorandum
of decision finding in favor of the defendant on the
plaintiffs' operative complaint and her counterclaim.
The court agreed with the defendant that the language

---

[2] The stipulation was agreed upon by the parties prior to trial and was
noted on the record at the start of trial. The court requested that the parties
file a written stipulation with the court. The written stipulation was filed
on August 1, 2023.

in the deed pertaining to the easement, in clear and unambiguous terms, "provide[d] a general right-of-way over the westerly portion of the plaintiffs' property for: access to the beach; access to the waters of Long Island Sound; full boating and swimming rights; and other normal uses," and further "provide[d] these rights in general, unrestricted terms." The court also rejected the plaintiffs' interpretation of the deed as "restrict[ing] the defendant's use of the beach and the waters of Long Island Sound to the area that is 'below the Mean High Water line . . . .'" As the court summarized, "there can be no real, bona fide dispute that the defendant has what may be generally described as a beach easement, which has the associated right to use the beach for 'normal' uses." The court proceeded to determine that "the plaintiffs [had] failed to meet their burden of proving by a fair preponderance of the evidence that the defendant ha[d] used the plaintiffs' property 'in a manner that [exceeded] the scope of the easement' as alleged in paragraph five of the operative . . . complaint. For these same reasons, the court [found] that the plaintiffs [had] failed to prove that the defendant ha[d] engaged in any conduct constituting a nuisance or trespass as alleged in this complaint." The court then stated: "The court emphasizes that the limited issue presented to the court for adjudication is the scope of the easement. The court does not address any issues as to whether the defendant has engaged in any activities that constitute an excessive or undue use of the easement." Finally, with respect to the defendant's counterclaim, the court stated that she had proved "by a fair preponderance of the evidence that the plaintiffs' conduct, premised on their position that the easement provides the defendant access only to 'the Beach and Waters of the Long Island Sound below the Mean High Water line,' has operated as an impediment to her use

and enjoyment of the easement as alleged in the counterclaim." As relief with respect to the defendant's counterclaim, the court "issue[d] an order enjoining the plaintiffs from interfering with the defendant's use of the easement based on the scope of the easement as found by the court . . . ." This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The plaintiffs' first claim on appeal is that the trial court improperly construed the deed as clearly and unambiguously creating a so-called beach easement in favor of the defendant, as the owner of the dominant estate, allowing use of the plaintiffs' property above the mean high water line. We conclude that the easement language is ambiguous and, therefore, remand the case for a new trial.

We begin by setting forth the applicable standard of review and relevant legal principles. "It is well settled that [a]n easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the rules authorized by the easement. . . . [T]he benefit of an easement . . . is considered a nonpossessory interest in land because it generally authorizes limited uses of the burdened property for a particular purpose. . . . [E]asements are not ownership interests but rather privileges to use [the] land of another in [a] certain manner for [a] certain purpose . . . . Except as limited by the terms of the servitude . . . the holder of an easement . . . is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. . . . Likewise, [e]xcept as limited by the terms of the servitude . . . the holder of the servient estate is entitled to make any use of the

servient estate that does not unreasonably interfere with enjoyment of the servitude. . . .

"The use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit. . . . Ordinarily when [judicial] opinions speak of the use of an easement, it arises in right-of-way cases. Thus use frequently involves the amount of traffic over the easement or alterations to the land to make it passable. . . . This is not to overlook, however, that [t]he owner of an easement has all rights incident or necessary to its proper enjoyment, [although] nothing more. . . .

"Significantly, the full scope of the use to be made of [an easement] requires evaluation of the purpose it was to serve. . . . [A]ppellate case law . . . [has] used the terms location, scope, and use somewhat interchangeably. . . . [Our Supreme Court has] read scope and use as having similar meanings insofar as they involve what [the] holder [of the easement] may do with it, [and] the purposes for which it may be used." (Citations omitted; internal quotation marks omitted.) *Williams* v. *Green Power Ventures, LLC*, 221 Conn. App. 657, 669–71, 303 A.3d 13 (2023), cert. denied, 348 Conn. 938, 307 A.3d 273 (2024).

"Our scope of review as to the intent behind language in a deed is plenary. . . . Although the intent to create an easement by deed is therefore a question of law over which our review is plenary . . . if the language of the deed is incomplete or ambiguous regarding the location, scope, or use of the easement, the trial court's resolution of those issues represents a question of fact subject to the clearly erroneous standard of review. . . . In the absence of unambiguous or complete language in the deed, therefore, determining the location, scope, and use of an express easement is a fact-intensive

inquiry properly subject to the clearly erroneous standard of review. . . .

"Nevertheless, when faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences. . . . The meaning and effect of the [language in the deed] are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances. . . .

"Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed . . . and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence. . . .

"In the construction of a deed or grant, the language is to be construed in connection with, and in reference to, the nature and condition of the subject matter of the grant at the time the instrument is executed, and the obvious purpose the parties had in view. . . . [I]f the meaning of the language contained in a deed or conveyance is not clear, the trial court is bound to consider any relevant extrinsic evidence presented by the parties for the purpose of clarifying the ambiguity. . . .

"Finally, we note that [t]he fact that servitudes are intended to bind successors to interests in the land, as well as the contracting parties, and are generally intended to last for an indefinite period of time, lends increased importance to the writing because it is often

the primary source of information available to a prospective purchaser of the land. The language should be interpreted to accord with the meaning an ordinary purchaser would ascribe to it in the context of the parcels of land involved. Searching for a particular meaning adopted by the creating parties is generally inappropriate because the creating parties intended to bind and benefit successors for whom the written record will provide the primary evidence of the servitude's meaning. . . . For this reason, [i]n determining the scope of an express easement, the language of the grant is paramount in discerning the parties' intent. . . . In addition, [a]ny ambiguity in the instrument creating an easement, in a case of reasonable doubt, will be construed in favor of the grantee." (Citations omitted; internal quotation marks omitted.) Id., 673–75.

"When considering whether an ambiguity exists in a deed, a court does not decide which party has the better interpretation, only whether there is more than one reasonable interpretation of the . . . language at issue." (Internal quotation marks omitted.) *Freidheim* v. *McLaughlin*, 217 Conn. App. 767, 782, 290 A.3d 801 (2023). A deed is ambiguous "[i]f we conclude that the language allows for more than one reasonable interpretation . . . ." (Internal quotation marks omitted.) Id.

As was noted earlier in this opinion, the deed provides in relevant part for the easement "to be used as a Right-of-Way for access to the Beach and Waters of Long Island Sound. In addition, there is reserved to the Grantors and their heirs, successors, assigns, occupants and tenants full boating and swimming rights and other normal uses." The court concluded that the scope of the easement was clear and unambiguous because "there is nothing unclear or novel about the use of the word 'beach' as [it is] used in th[e] easement. Interpreting this language 'with the meaning an ordinary purchaser would ascribe to it in the context of the parcels of

land involved'; *Williams* v. *Green Power Ventures, LLC*, supra, 221 Conn. App. 674–75; the word beach may [be] defined as the sandy area of land along the waterline or the 'land on the margin of the sea.' Ballentine's Law Dictionary (3d Ed. [1969]) [p. 127]. In this particular context, a more technical definition is that the word 'beach' refers to the sandy shore above mean high water, because, under Connecticut law, the area between the high and low water marks is owned by the state. See *Newkirk* v. *Sherwood*, 89 Conn. 598, [605], 94 A. 982 (1915) ('[t]he word "beach" may be used to mean land between high and low-water mark[s], or it may be used to include a sandy shore above mean high water which is washed by storms and by exceptionally high tides'); accord *Mihalczo* v. *Woodmont*, 175 Conn. 535, 538, 400 A.2d 270 (1978) ('the land between high and low-water marks remains in the state'); *State* v. *Knowles-Lombard Co.*, 122 Conn. 263, [265], 188 A. 275 (1936) ('[i]t is settled law in this [s]tate that the public, whose representative is the [s]tate, is the owner of the soil between high and low-water mark upon navigable water where the tide ebbs and flows')." The court also determined that "there is nothing unclear or ambiguous about the language of the easement providing access and use of the beach and waters of Long Island Sound for boating, swimming, and 'other normal uses.' To explain conversely, the uses reserved through the easement exclude 'abnormal' uses that are uncharacteristic with boating, swimming, or beach activities."

Although both sides argue that the easement language is clear and unambiguous, they assert different interpretations. The plaintiffs argue that the court erred in its interpretation, as some of the "terms used in the deed, including the word 'Beach', are recognized to have varying meanings, particularly when referring to a boundary or other locus referenced in a deed. Further, the court's interpretation of the meaning of the words used in the

deed depends upon an arbitrary parsing of those words, and a failure to attribute any meaning to the capitalization of words and their use in the phrase, 'the Beach and Waters of Long Island Sound,' that distorts their meaning and is not consistent with the rules of construction applicable to deeds and easements, or with normal usage." Thus, the plaintiffs contend that this phrase, as it was used in the deed, indicated an intent of the original parties to the deed for the easement to be used solely as a right-of-way for access to the area below the mean high water line. The defendant argues to the contrary that the easement's "[i]nclusion of the specific term 'Beach' in addition to the phrase 'and the waters of Long Island Sound' evinces the grantors' specific intent that the easement is creating access to both the water as well as the beach above the high-water mark."

In light of these conflicting arguments regarding the location and scope of the easement, resolving the plaintiffs' claim requires us to determine whether the term "Beach," as it is used in the deed, is clear and unambiguous. See *Williams* v. *Green Power Ventures, LLC*, supra, 221 Conn. App. 673–75. For the reasons that follow, we conclude that the easement language allows for more than one reasonable interpretation and is, therefore, ambiguous. See *Freidheim* v. *McLaughlin*, supra, 217 Conn. App. 782.

The term "Beach" is not defined in the deed and, therefore, we must look to the ordinary meaning of the term. See id., 784. At the time when the deed was created, Black's Law Dictionary defined "beach" in relevant part as: "the space between ordinary high and low water mark . . . or the space over which the tide usually ebbs and flows. It is a term not more significant of a sea margin than 'shore.' . . . In common parlance designates that portion of shore consisting generally of sand and pebbles, resulting usually from the action of water, as distinct from upland, to which it often extends

above normal high-water mark. . . . Beach is synonymous with 'shore,' 'strand,' or 'flats.' The term may also include the sandy shore above mean high water which is washed by storms and exceptionally high tides.'' (Citations omitted.) Black's Law Dictionary (4th Ed. 1968) p. 194. Additionally, Ballentine's Law Dictionary contemporaneously defined "beach" as the "[l]and on the margin of the sea, lake, or river . . . the land lying between the lines of high water and low water, land over which, if a tidal stream or body of water is involved, the tide ebbs and flows." (Citation omitted.) Ballentine's Law Dictionary (3d Ed. 1969) p. 127. On the basis of the foregoing definitions, the term "beach," as it was used in the deed, could reasonably be interpreted as a reference to the area above the mean high water line or as a reference to the area below the mean high water line.

Our conclusion that there is more than one reasonable interpretation of the term "beach," as it was used in the deed, is further bolstered by our case law, which does not specify a precise and uniform definition of the term. Our Supreme Court has held that "[t]he word 'beach' may be used to mean land between high and low-water mark, or it may be used to include a sandy shore above mean high water which is washed by storms and by exceptionally high tides." *Newkirk* v. *Sherwood*, supra, 89 Conn. 605; see also *Dawson* v. *Orange*, 78 Conn. 96, 119, 61 A. 101 (1905) ("[t]he term 'beach' is used sometimes for the shore between high and low water mark, and sometimes for a strip of land lying next to and above such shore"); *Merwin* v. *Wheeler*, 41 Conn. 14, 26 (1874) ("[t]he word 'beach' has no such inflexible meaning that it must denote land between high and low water mark"). The defendant correctly notes that some cases suggest that "beach" specifically refers to the area above the mean high water mark, whereas the area between the high and low water

mark is called the "shore." See, e.g., *Church* v. *Meeker*, 34 Conn. 421, 424–25, 431 (1867). The lack of consistency in our case law, however, as to whether the term "beach," as a matter of law, refers to the area above the mean high water line lends support to our conclusion that the easement language is ambiguous.

The plaintiffs argue that the easement provides a right-of-way solely for access to the land below the mean high water mark. The plaintiffs contend that the capitalization of the term "Beach" in the deed is significant when reading the deed as a whole, as it demonstrates an intent to refer specifically back to Fairfield Beach, which was identified earlier in the deed[3] and, in their view, denotes a proper noun referring to the area below the mean high water mark. The plaintiffs' interpretation of the term "Beach" is also supported by the easement's inclusion of the second sentence, reserving for the defendant "full boating and swimming rights and other normal uses." As the plaintiffs note, it is significant that "the only two specific examples

---

[3] The deed states in relevant part that the Badolatis "do give, grant, bargain, sell and confirm unto the said GERALD RINGEL and WANDA RINGEL and unto the survivor of them and unto such survivor's heirs and assigns, ALL THAT certain piece, parcel or tract of land together with the buildings thereon, situated in the Town of Fairfield, County of Fairfield and State of Connecticut, at Fairfield Beach, so called, designated as part of lot #10 on a certain map on file in the Office of the Fairfield Town Clerk as Map No. 52 and more fully described as follows:

"Beginning at the southeast corner of the premises herein described at a point marking the intersection with the mean high water mark of the waters of Long Island Sound of the divisional line between the premises herein described and land now or formerly of Lorraine H. Testo and proceeding thence west 25 feet more or less along the mean high water mark of Long Island Sound to a point marking the intersection with said mean high water mark of the divisional line between the premises herein described and land now or formerly of Pauline R. Mullins: running thence northerly along said land now or formerly of Pauline R. Mullins to the road line of Fairfield Beach Road; running thence easterly 25± feet along said road line of Fairfield Beach Road to a point; thence running southerly along land now or formerly of Lorraine H. Testo to the point or place of Beginning. . . ."

provided of 'normal uses' involve water-dependent activities, and not uses that involve use of upland areas above the mean high water line." These examples suggest that "Beach" may have been intended to refer to the area below the mean high water mark, where the easement holder could engage in water-dependent activities. We determine, therefore, that it is reasonable to conclude, in "considering all [of the deed's] relevant provisions and reading it in the light of the surrounding circumstances"; (internal quotation marks omitted) *Williams* v. *Green Power Ventures, LLC*, supra, 221 Conn. App. 673; that "Beach" was intended to refer specifically to Fairfield Beach, meaning the area below the mean high water mark.

In contrast, the defendant argues that the easement allows her access to the area above the mean high water mark because the "easement grants access to the Beach *and* Waters of Long Island Sound *in addition to* 'boating, swimming and other normal uses.' It is obviously phrased in the conjunctive." (Emphasis in original.) The defendant argues that, "[i]f indeed the easement was meant to merely allow the [defendant] and [her] guests to pass over the [plaintiffs'] property to the waters of Long Island Sound, that could easily have been accomplished without mention of the specific term 'Beach.' " As was noted previously in this opinion, in support of her interpretation of the term "Beach," the defendant relies on cases in which this court and our Supreme Court have suggested that the term "beach" refers to the area above the mean high water mark. See *Short Beach Cottage Owners Improvement Assn.* v. *Stratford*, 154 Conn. 194, 200, 224 A.2d 532 (1966); *Church* v. *Meeker*, supra, 34 Conn. 424–25; *Mandes* v. *Godiksen*, 57 Conn. App. 79, 87–89, 747 A.2d 47, cert. denied, 253 Conn. 915, 754 A.2d 164 (2000). For the aforementioned reasons, however, including the fact that our case law's definition of "beach" is not consistent, we conclude

that both of the parties' interpretations of the term "Beach" are reasonable and, therefore, the easement is ambiguous as to its location and scope.

In light of the foregoing, we conclude that the trial court erred in concluding that the easement language is clear and unambiguous. As a result, the court's judgment must be reversed and the case must be remanded for a new trial to resolve the ambiguity as to the scope and location of the easement. See *Parisi* v. *Parisi*, 315 Conn. 370, 386, 107 A.3d 920 (2015) (remanding to trial court to resolve ambiguity in separation agreement "through a determination of [the original parties'] intent after consideration of all available extrinsic evidence and the circumstances surrounding the entering of the agreement"); see also, e.g., *Williams* v. *Green Power Ventures, LLC*, supra, 221 Conn. App. 674 ("[i]n arriving at the intent expressed . . . in the language used . . . it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence" (internal quotation marks omitted)); id., 675 ("[a]ny ambiguity in the instrument creating an easement, in a case of reasonable doubt, will be construed in favor of the grantee" (internal quotation marks omitted)); *Freidhem* v. *McLaughlin*, supra, 217 Conn. App. 790 ("[F]actual findings are a necessary prerequisite to determine the scope and extent of [a plaintiff's] rights with respect to [an] easement. It is well established that appellate courts are not triers of fact and rely on the trial court's findings and conclusions related thereto." (Internal quotation marks omitted.)).

## II

The plaintiffs next claim on appeal that "[t]he trial court erred in making findings and issuing orders based

on allegations and claims that the defendant had withdrawn prior to trial, including in finding that the plaintiffs had impeded the defendant's use of the easement and in issuing injunctive relief with respect thereto.'' We agree in part.[4]

Preliminarily, we note that, although our resolution of the plaintiffs' first claim is dispositive of this appeal, we will also address the plaintiffs' second claim because it is sufficiently likely to arise on remand. See *Budlong & Budlong, LLC* v. *Zakko*, 213 Conn. App. 697, 714 n.14, 278 A.3d 1122 (2022) (''[a]lthough our resolution of the defendant's first claim is dispositive of this appeal, we also address the defendant's second claim because it is likely to arise on remand'').

The following legal principles and standard of review govern our resolution of this claim. ''Any determination regarding the scope of a court's subject matter jurisdiction or its authority to act presents a question of law over which our review is plenary. . . . Generally, it is clear that [t]he court is not permitted to decide issues outside of those raised in the pleadings.'' (Citation omitted; internal quotation marks omitted.) *Lynn* v. *Bosco*, 182 Conn. App. 200, 213, 189 A.3d 601 (2018). When interpreting a stipulation, ''[u]nless the language is so clear as to render its interpretation a matter of law, the question of the parties' intent in entering into a stipulation is a question of fact that is subject to the 'clearly erroneous' scope of review.'' *Rosenfield* v. *Metals Selling Corp.*, 229 Conn. 771, 780, 643 A.2d 1253

---

[4] The plaintiffs also claim that the court improperly allowed, over their objections, evidence to be introduced by the defendant that was not relevant to the sole issue to be adjudicated and exceeded the limitation on evidence as stipulated by the parties. We need not delve into the merits of this claim following our conclusion in part I of this opinion that the present action must be remanded for a new trial. In light of our conclusion in part II of this opinion, however, that the court improperly adjudicated claims that were withdrawn prior to trial, we note that evidence that solely supported such claims should not have been admitted over the plaintiffs' objections.

(1994). "Ordinarily . . . stipulations of the parties should be adopted by the court. . . . If, for some reason, the court cannot adopt the stipulation of the parties, it should state its disapproval of the stipulation and the reasons for its disapproval on the record." (Citation omitted.) *Central Connecticut Teachers Federal Credit Union* v. *Grant*, 27 Conn. App. 435, 438, 606 A.2d 729 (1992).

As was previously stated, the parties narrowed the issues in dispute at trial by way of the stipulation. The stipulation provides in relevant part: "The parties agree and acknowledge that the defendant, as the owner of 1206 Fairfield Beach Road, has the right to pass and repass along the western boundary of the plaintiffs' property at 1205 Fairfield Beach Road . . . . The parties are in dispute as to whether the easement confers upon the defendant, as the owner of 1206 Fairfield Beach Road, any rights to use and occupy any other portion of the plaintiffs' property at 1205 Fairfield Beach Road along the western boundary of the plaintiffs' property and, if any, the nature and extent of any such rights . . . . The parties acknowledge that the plaintiffs claim that the defendant has used the plaintiffs' property at 1205 Fairfield Beach Road in a manner that exceeds the rights conferred upon the defendant as the owner of 1206 Fairfield Beach Road. Conversely, the defendant claims that the plaintiffs have interfered with and prevented the defendant from using the plaintiffs' property in violation of the easement claimed by the defendant as the owner of 1206 Fairfield Beach Road . . . . There shall be no evidence presented by the parties at trial as to any conduct by any party, including their families, guests, tenants, and invitees, concerning any alleged violations of the easement . . . . The parties each acknowledge that they shall respect and shall not interfere with the rights of the parties to use and enjoy

the plaintiffs' property or any right conferred by the easement, all as determined by the court."

Additionally, the parties stated on the record at the start of trial that they were withdrawing their respective nuisance claims. The following colloquy occurred between the court and the parties' respective counsel:

"The Court: Question. There [were] allegations of nuisance in the complaint. Based on the . . . stipulation, the nuisance claim is being withdrawn, is that correct or not?

"[The Defendant's Counsel]: Yes, Your Honor.

"The Court: Okay, noted for the record.

"[The Defendant's Counsel]: Just on the—just on the scope of the easement—

"The Court: Very good. . . . You didn't say that explicitly, but let's get that explicitly on the record. Thank you.

"[The Plaintiffs' Counsel]: And for the plaintiffs there are allegations of nuisance as well and, once again, the injunction we would seek would be to enforce the easement as it is interpreted by the court.

"The Court: All right. Very good.

"[The Defendant's Counsel]: Same for the defendant, Your Honor.

"The Court: Very Good."

We conclude that the language of the stipulation is so clear as to render its interpretation a matter of law. See *Rosenfield* v. *Metals Selling Corp.*, supra, 229 Conn. 780. The parties clearly expressed an intent to abandon their respective claims that the other party engaged in conduct that (1) exceeded the scope of the easement or impeded the defendant's use of the easement, and

(2) constituted a nuisance. This left the scope and location of the easement as the sole issue to be adjudicated, and to the extent that the court ruled on issues beyond that, such rulings were improper.

Despite the stipulation, pursuant to which the parties withdrew their claims pertaining to alleged misconduct and nuisance, the court stated: "[T]he court finds that the plaintiffs have failed to prove that the defendant has engaged in any conduct constituting a nuisance or trespass as alleged in this complaint. . . . As to the defendant's counterclaim, the court finds that the defendant has proven by a fair preponderance of the evidence that the plaintiffs' conduct, premised on their position that the easement provides the defendant access only to 'the Beach and Waters of Long Island Sound below the Mean High Water line,' has operated as an impediment to her use and enjoyment of the easement as alleged in the counterclaim." This was a clear deviation from the stipulation, as the court ruled on issues that were no longer before it, namely, whether the plaintiffs or the defendant engaged in conduct constituting a violation of the easement or a nuisance. Moreover, in deviating from the stipulation of the parties, the court did not "state its disapproval of the stipulation and the reasons for its disapproval on the record," as is required. See *Central Connecticut Teachers Federal Credit Union* v. *Grant*, supra, 27 Conn. App. 438.

With respect to the plaintiffs' discrete argument that the court issued injunctive relief based on allegations and claims that the defendant had withdrawn prior to trial, we disagree. The court stated in relevant part: "Based on the court's judgment in favor of the defendant on her counterclaim, the court issues an order enjoining the plaintiffs from interfering with the defendant's use of the easement based on the scope of the easement as found by the court herein." This order pertained to the sole issue to be adjudicated by the court and,

therefore, was not improper. As was noted, the parties sought an injunction "to enforce the easement as it is interpreted by the court," which was what the court ultimately granted.

In sum, we conclude that the court erred in making findings based on claims that the defendant had withdrawn prior to trial. The court's order issuing injunctive relief, however, pertained to the issue presented for adjudication.

The judgment is reversed and the case is remanded for a new trial consistent with this opinion.

In this opinion the other judges concurred.